[Civ. No. 4143.   Second Appellate District, Division One.—January 31, 1923.]

MARBLEHEAD LAND COMPANY (a Corporation) et al., Petitioners, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

[1] Eminent Domain—Highways—Possession and Use of Land by State Officers—Certiorari.—State officers, in taking possession of land to be condemned for highway purposes, and in carrying on the work of grading for the highway, after an order has been entered, pursuant to the provisions of section 14 of article I of the constitution, giving such right of possession upon deposit of security, are "persons acting under" the orders made by the superior court in the condemnation proceeding so as to subject such officers to the provisions of a writ of review (issued by the district court of appeal) requiring "all persons acting under" the orders made by the superior court in the condemnation proceeding to "desist from further proceedings in the matter."

[2] Id.—Possession and Use of Land—Jurisdiction of Court.—The continuing jurisdiction of the superior court over a condemnation suit, existent until condemnation decree, includes a jurisdiction to control the possession and use of the land by the plaintiffs in the condemnation proceeding under the orders made pursuant to the provisions of section 14 of article I of the constitution.

[3] Id.—Sufficiency of Deposit—Rights of Defendant.—A defendant in a condemnation proceeding cannot be deprived of the possession and use of his property unless the deposit of money be maintained, under the orders of the court, at such an amount as will adequately secure to him the payment of the compensation found by the decree of condemnation to be just.

[4] Id.—Supersedeas—Knowledge of Terms by Highway Commission—Violation—Contempt.—The members of the state highway commission may be punished for contempt for a violation of the terms of the *supersedeas* which is made a part of a writ of review under sections 1071 and 1072 of the Code of Civil Procedure, where such officers are subject to the provisions of the *supersedeas* clause of the writ and they have knowledge of its existence and terms, even though they are not parties to the proceeding for review.

Editor's Note: On *certiorari*, the supreme court ordered the contempt order issued in the above-entitled proceeding annulled. (See *A. B. Fletcher et al.* v. *District Court of Appeal*, —— Cal. ——.)

APPLICATION for a Writ of Supersedeas and for an order adjudging the members of the state highway commission to be guilty of contempt. Supersedeas denied. Contempt order issued.

The facts are stated in the opinion of the court.

Grant Jackson, Nathan Newby and Newby & Palmer for Petitioners.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and Lorrin Andrews for Respondents.

WORKS, J.—The two matters now awaiting our disposition arise out of an application for a writ of review, and the title above set forth is the title of the proceeding for review. In order that our ruling upon the two specific matters which now engage our attention may be thoroughly understood, it will be necessary for us to state with some particularity the questions of fact and law which are involved in the original proceeding for the writ of review.

The present constitution of California has always contained a provision to the effect that "Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court, for the owner, and no right of way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be first made in money or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in a court of record, as shall be prescribed by law." (Const., art. I, sec. 14.) In fact, this language was the entire text of the section as originally adopted. In 1911 the section was amended in a respect which is not of moment in the present litigation. In 1918 a second amendment was adopted. This amendment opens with the original text as above set forth, the time-honored language being followed immediately by these provisions: "*provided,* that in an action in eminent domain brought by the state, or a county, or a municipal corporation, or a drainage, irrigation, levee,

or reclamation district, the aforesaid state or political subdivision thereof or district may take immediate possession and use of any right of way required for a public use whether the fee thereof or an easement therefor be sought upon first commencing eminent domain proceedings according to the law in a court of competent jurisdiction and thereupon giving such security in the way of money deposits as the court in which said proceedings are pending may direct, and in such amounts as the court may determine to be reasonably adequate to secure to the owner of the property sought to be taken immediate payment of just compensation for such taking and any damage incident thereto, including damages sustained by reason of an adjudication that there is no necessity for taking the property, as soon as the same can be ascertained according to law. The court may, upon motion of any party to said eminent domain proceedings, after such notice to the other parties as the court may prescribe, alter the amount of such security so required in such proceedings." The section now stands as it was amended in 1918.

On December 13, 1922, the people of the state of California, by the department of public works of the state of California, as plaintiff, filed complaint in eminent domain with respondent superior court. All the petitioners before us for the writ of review were defendants in that action, as were also county of Los Angeles, Reider-Haag Company, a corporation, and eight fictitiously named persons. By the complaint the plaintiff in the action sought to condemn a right of way nineteen miles in length for a state highway across that extensive tract of land familiarly known as the Rancho Malibu. After the filing of the complaint, and upon motion to that end, respondent superior court made its two certain orders in the action, each dated December 13, 1922. The first of these, after reciting the fact that the complaint had been filed, and various other matters, including a description of the right of way sought to be condemned, ordered "that the plaintiff . . . deposit in" a certain named bank "the sum of Thirty-two Thousand One Hundred Eighty Dollars, in a savings account on interest, which sum is to be placed in a special deposit to be paid out only upon the order of the Court herein, and to be held as security for payment to the owner or owners of the property

sought to be taken as just compensation for the taking of the parcel of land, and any damage incident thereto, including' damages sustained by reason of any adjudication that there is no necessity for taking the property as soon as the same can be ascertained according to law,'' and also ''that upon satisfying the Court that such deposit has been made in accordance with this order the said plaintiff shall be given an order by the Court authorizing it to take immediate possession and use of the right of way hereinabove referred to, and described.'' The second order, after reciting that it satisfactorily appeared to the court that the deposit required by the first order had been made, was to the effect ''that the said plaintiff, the State of California, may take immediate possession and use of the right of way described in the complaint and in said order, and which said right of way is described, as follows'': (Here followed a description of the right of way.) It is these two orders which are the subject of the application for the writ of review, and, as we have already remarked, the writ issued.

Section 1071 of the Code of Civil Procedure is in part as follows: ''The writ of review must command the party to whom it is directed to certify fully to the court issuing the writ, . . . a transcript of the record and proceedings . . . , that the same may be reviewed by the court; and requiring the party, in the mean time, to desist from further proceedings in the matter to be reviewed.'' Section 1072 of the same enactment provides: ''If a stay of proceedings be not intended, the words requiring the stay must be omitted from the writ; these words may be inserted or omitted, in the sound discretion of the court, but if omitted, the power of the inferior court or officer is not suspended or the proceedings stayed.'' Following the mandate of these sections the writ of review which issued in the present instance was in the usual form prescribed by section 1071, containing at its close the clause, ''and in the mean time we command and require the said respondents, and all persons acting under said orders, to desist from further proceedings in the matter so to be reviewed.''

We come now to a more direct consideration of the two matters which are the subject of our present inquiry. Soon after the filing of the complaint in the condemnation action

and the making by the superior court of the two orders above mentioned, and pursuant to the terms of the second of those orders, certain officers of the state, acting either directly or through employees of the state or of some of its departments, entered into possession of the real property covered by the right of way described in the complaint and in the orders. That possession they have maintained ever since. These officers are A. B. Fletcher, chief of the division of highways of the state of California, and N. D. Darlington, C. A. Whitmore, and G. C. Mansfield, members of the California Highway Commission. While the writ of review was not technically served upon these four officers, they were each made acquainted with its contents, and such admissions of service and such stipulations have been made between the various parties that it is to be deemed by us that a service of the writ was in due form made upon each of them. In other words, they are before us exactly as if formal delivery of a duly authenticated copy of the writ had been made to each of them. We shall hereafter, for convenience, therefore, speak as if service had actually been made upon them. What the effect of that service was, it becomes our duty to determine.

Immediately after taking possession of the right of way the four officers began the construction of the proposed highway across the Rancho Malibu and along the proposed right of way, and they continued with the work after service upon them of the writ of review. In the prosecution of the labors incident to the construction, probably before and certainly after the service of the writ, they removed parts of the soil from place to place and effected a substantial disturbance of the surface of the country. In short, they proceeded with the work of grading necessary to an installation of the highway, making the cuts and fills incident to the prosecution of a work of that nature. Thereupon petitioners presented to this court an affidavit showing the character of the operations being conducted upon the property and asked the issuance of an order to show cause why the four officers should not be punished as for a contempt of court in violating the order for a stay of proceedings which was incorporated in the writ of review. The order to show cause was issued. To it the officers make return that they are advised by their counsel that they

have the right to proceed with the construction of the high-
way in question, and, in effect, that it is their duty to do
so, notwithstanding the clause for a stay of proceedings.
Whether they are guilty of a contempt of this court is the
first of the two questions to which we have referred as
awaiting our disposition.

[1]   As the writ of review required, in part, that "all per-
sons acting under" the orders made by respondent court "de-
sist from further proceedings in the matter" sought to be re-
viewed, it is at once apparent that a great part of our labor
will be to determine whether, in carrying on the work of
grading for the highway, the four state officers are acting
under respondents in the matter to be reviewed. We are of
the opinion that this question must be answered unfavorably
to the position of the officers. It appears to us that the pos-
session of the right of way is in respondent court and that
it will be so until the rendition of decree by that tribunal in
the condemnation suit. It may not be strictly correct to
say that respondent court has impounded the real property
over which the proposed right of way is to pass, or has im-
pounded the right of way itself, for the use of the word
"impound," as related to judicial procedure, is usually if
not invariably descriptive of the act or process by which a
court takes possession, pending the conclusion of a litigation,
of money or other personal property in controversy. Never-
theless it appears to us that under the provisions of the con-
stitution to which we have referred respondent court, since
the making of the two orders which petitioners seek to re-
view, in effect occupies the same position as to this real
property, or as to the right of way, as does an impounding
court toward the personal property which it has seized. If
these views be correct it at once follows that the state officers
are acting, before decree in the condemnation suit, under
respondent court as to everything they do in and about the
"impounded" real property or right of way. If our views
are correct it at once also follows that the officers are act-
ing, at least before such decree, in the matter sought by peti-
tioners to be reviewed.

We shall now state the arguments which have led us to
the views above expressed. It will be observed, from a gen-
eral survey of the language of the constitution providing for
the exercise of the right of eminent domain, that there was

by the amendment of 1918 no attempt to authorize a taking for public use prior to condemnation decree. The order provided for by the section can neither advance nor retard the ultimate taking. The organic law merely allows to a would-be condemnor the "possession" and "use" of the land or right of way sought to be taken finally by the decree of condemnation. The nature and extent of this possession and use and the manner in which they may be controlled are ascertainable upon a more specific consideration of the language of the constitution. The "use" allowed under the section plainly contemplates, in a given case, the prosecution of a public improvement even to completion, if sufficient time for that outcome shall elapse between the date of the order allowing possession and use and the date of decree of condemnation. Can it be possible that under such circumstances the "use" of property of which possession is taken under an order of court can be exercised by the possessor in an unbridled manner and without interference or control by the court making the order? Suppose in the present instance that those who represent the state in the construction of the highway should by mistake depart from the lines of the right of way described in the proceedings for condemnation and should prosecute the construction of the road over parts of petitioners' property not covered by the right of way really intended to be taken. Suppose that by mistake, or through bad engineering, they should construct a culvert over some waterway with an aperture so small that it could not carry the waters of the stream in time of storm, thus entailing a certainty of the flooding of property of petitioners outside the right of way, with the damage naturally consequent upon such an event. Suppose that, during the work of construction, by mistake or otherwise, they should occupy and commit waste upon property of petitioners outside the lines of the right of way. Can it be possible that in case of any of these eventualities it would not be within the jurisdiction of respondent court, upon the motion of defendants in the condemnation suit, and at any time before condemnation decree, to require the officers of the state to administer properly the "use" allowed by the court's order granting possession and use? It is well settled, of course, that after final decree in the ordinary condemnation suit a defendant may protect his property from or collect damages

for such invasions or harmful acts as we have supposed may be committed in the present instance. We cite authorities to various principles of law which bear more or less directly upon this assertion. A voluminous array of cases is appended in an encyclopedic work to the statement that, "As a general rule, except where an exclusive remedy has been provided by statute, the owner of property appropriated or injured for a public use without just compensation having been made may maintain an action at law for the damages sustained thereby" (20 C. J. 1162). Where one owns land abutting upon a public improvement, he may recover for such damages caused to his property by the making of the improvement as are over and above those suffered by him in common with the general public (*Eachus* v. *Los Angeles Ry. Co.,* 103 Cal. 614 [42 Am. St. Rep. 149, 37 Pac. 750]; *Smith* v. *Southern Pac. R. R. Co.,* 146 Cal. 164 [106 Am. St. Rep. 17, 79 Pac. 868]; *Sievers* v. *Root,* 10 Cal. App. 337 [101 Pac. 925]; *Hunt* v. *Manning,* 24 Cal. App. 44 [140 Pac. 39]; *Fairchild* v. *Oakland & Bay Shore Ry. Co.,* 176 Cal. 629 [169 Pac. 388]). If a railroad company enters upon land and constructs its road before commencing condemnation proceedings, the owner of the land may recover damages for the trespass (*Robinson* v. *Southern California Ry. Co.,* 129 Cal. 8 [61 Pac. 947]). If one who is engaged in the construction of a line which is to be employed in the administration of a public use appropriates or commits waste upon lands outside the right of way which has been granted to or which has been condemned by him, the owner of the invaded lands may recover damages for the injury resulting (*Phillips* v. *American Tel. & Tel. Co.,* 71 S. C. 571 [51 S. E. 247]; 20 C. J. 1164). Where the public authorities engage in the construction of a public improvement and by mistake place the structure upon private lands, the owner may recover compensation for the taking of his property, or for the damages to it, in an appropriate action (*Tyler* v. *Tehama County,* 109 Cal. 618 [42 Pac. 240]). When one exercising the right of eminent domain appropriates a right of way wider than that allowed by law, the owner of the excess may recover it in an action of ejectment (*McKennon* v. *St. Louis etc. Ry. Co.,* 69 Ark. 104 [61 S. W. 383]; *Pfaender* v. *Chicago & N. W. Ry. Co.,* 86 Minn. 218 [90 N. W. 393]; 20

C. J. 1156). Where a concern enters upon land not covered by the grant or condemnation of a right of way, for the purpose of constructing a line or plant to be used in the administration of a public use, the owner of the unlawfully occupied property may maintain trespass (20 C. J. 1166). If a public improvement is constructed in a negligent manner and the land of an abutting property owner is thereby damaged, he may recover for the damage done (*De Baker v. Southern California Ry. Co.,* 106 Cal. 257 [46 Am. St. Rep. 237, 39 Pac. 610]; 20 C. J. 1165). Where one seeking to exercise the right of eminent domain attempts to enter upon the land sought to be condemned before the amount of compensation to be made is ascertained and paid, the entry may be prevented by injunction (*Grigsby* v. *Burtnett,* 31 Cal. 406). "An owner may by injunction restrain the taking or injury of property not covered by the condemnation proceedings" (20 C. J. 1171). The rights of one whose property is taken or damaged after condemnation decree, or without such decree, being thus plainly stated, what are his rights *before* condemnation decree in such a situation as the present? Respondent court, necessarily, will have full jurisdiction of the condemnation suit now before it until decree rendered. It will then make disposition of the right of way sought to be acquired by the plaintiffs. Can it be that, in the meanwhile, by a mere interlocutory order for possession and use of the land covered by the right of way, it has placed the plaintiffs in such a position that they may deal with the land itself as they please and without the control or interference of the court? We think not. **[2]** It is plain to us that the continuing jurisdiction of respondent court over the condemnation suit, existent until condemnation decree, includes a jurisdiction to control the possession and use of the land by plaintiffs under the orders made pursuant to the provisions of the constitution. In a further analysis of those provisions we shall present additional reason for this view.

It is to be observed that, as a prerequisite to the making of an order for possession and use, the constitution provides that the plaintiffs in a condemnation suit shall give "such security in the way of money deposits as the court . . . may direct, and in such amounts as the court may determine to be reasonably adequate to secure to the owner . . . imme-

diate payment of just compensation . . . as soon as the same can be ascertained according to law." It is certain that, when such money deposits are made and the consequent order for possession and use follows, the court making the order has exclusive control of the money deposited. The cash is to be deposited merely as security for the immediate payment of compensation when the amount of compensation is ascertained. For the time being neither the plaintiff nor the defendant has any right to the possession of it and neither may exercise any control over it. If the compensation is not paid by the plaintiff to the defendant immediately, or perhaps within a reasonable time, after the amount to be paid is finally ascertained, then the court must make some order transmuting the money deposited from security into payment. That is, the cash must by appropriate order be turned over to the defendant. If the compensation be promptly paid by the plaintiff, then the court, perforce, must order the cash to be returned to the plaintiff. The money is undoubtedly in the possession and control of the court until condemnation decree, and perhaps until a reasonable time thereafter. Does it not legitimately follow that during a like period the court holds and may exercise a reciprocal control over the land included in the order for possession and use and embraced within the limits of the right of way sought to be taken? We think it does.

[3] The language of the constitution immediately following that just quoted is most significant. "The court may, upon motion of any party to said eminent domain proceedings, after such notice to the other parties as the court may prescribe, alter the amount of such security so required in such proceedings." Suppose that in a given action in which an order for possession and use had been made the defendant should become convinced that the amount of security was inadequate and should move for an increase under this provision. Suppose that after due consideration the court should order the increase and the plaintiff should refuse to make deposit of the added amount. It is too plain for words that in such an event it would become the immediate duty of the court to order that the possession of plaintiff should cease, that his use of the land should terminate, and that the defendant should resume the interrupted possession and control of his property. A court cannot in the first instance

make its order for possession and use until an amount of money fixed by it as adequate security has been placed under the court's control. Under the sentence of the constitution now under examination a court surely could not permit the possession and use to continue if the security became and, after order for its increase, were allowed to remain inadequate. Taking the entire provision of the constitution on the subject, it is obvious that a defendant cannot be deprived of the possession and use of his property unless the deposit of money be maintained, under the orders of the court, at such an amount as will adequately secure to him the payment of the compensation found by the decree of condemnation to be just.

Let us take another view of the sentence quoted from the constitution in the paragraph immediately preceding the present one. Suppose again that a defendant, the possession and use of whose property had been ordered to the plaintiff, should ask the court for an order to show cause why the amount of deposited security should not be increased. Suppose the showing made by the defendant in support of his application were so strong that it appeared to the court that it might be necessary to order the security increased in a large amount. Can it be possible, under such circumstances, that the court, upon an application to that end, could not direct that the "use" of the plaintiff under the order for possession and use should cease pending the hearing on the order to show cause? It appears to us to be plain that such a jurisdiction would necessarily exist under the broad principles of equity and under the constitutional guaranties incident to the taking of private property under the right of eminent domain.

For the foregoing reasons it seems to us that respondent court has in effect "impounded" the real property covered by the proposed right of way, and that the four officers of the state, in exercising the "use" authorized by respondent court are acting under the court and that their acts are proceedings under the orders desired by petitioners to be reviewed by this court under their petition for the writ of review. In other words, we conclude from what has been said above that the four officers are guilty of a contempt of this court. We do, in addition, however, cite some general authority upon the question as to what matters constitute or

are a part of proceedings in an action or under an order or a judgment of a court. In doing so, however, we shall notice but a few of the many cases on the subject which are pointed out to us by petitioners. In applying a provision of the Revised Statutes of the United States inhibiting injunctions of federal courts against "proceedings in any court of the state," it was determined that a sale of land by a sheriff under an execution issued by a state court was a proceeding in the court. The tribunal which passed upon the question, laying aside for a moment the words of the federal statute, said that "the act, however tortious, of an executive officer of a court, done under color of its process, is to be regarded as a 'proceeding' of that court, which comity and public policy require courts of concurrent jurisdiction not to interfere with by injunctive or dispossessory process." The court then held that this rule of comity and public policy was conclusive in construing the federal statute (*American Assn.* v. *Hurst,* 59 Fed. 1 [1 C. C. A. 598]). In another case a federal court approved the language of an earlier decision to the effect that "This term 'proceedings' may properly, and, I think, must necessarily, include all steps taken by the court, or by its officers, under its process, from the institution of the suit until the close of the final process of execution which may issue therein" (*Marblehead Land Co.* v. *Los Angeles County,* 276 Fed. 305). The supreme court of this state, in *Stonesifer* v. *Kilburn,* 94 Cal. 33 [29 Pac. 332], approved the following quotations from other cases: "The word [proceeding] is generally applicable to any step taken by a suitor to obtain the interposition or action of a court. . . . The term 'proceeding' is generally applicable to any step taken by a party in the progress of a civil action. Any thing done from the commencement to the termination is a proceeding." It was said in *Burns* v. *Superior Court,* 140 Cal. 1 [73 Pac. 597]: "The word 'proceeding' necessarily has different meanings, according to the context and the subject to which it relates. . . . In section 473 of the Code of Civil Procedure, and in similar statutory provisions of other states, it has a broader signification [the court, under circumstances stated earlier in the opinion, having attributed a *narrow* meaning to it], and includes any step taken in a case, whether by the court or by one of the parties thereto (citing cases). 'In its more general sense, in law, it means

all the steps or measures adopted in the prosecution or defense of an action' (citing cases). In Anderson's Law Dictionary, page 816, it is defined thus: 'A proceeding in court is an act done by the authority or direction of the court, express or implied.'" A consideration of these authorities affords an added justification for the views which we have already expressed, for it is plain from them that the four officers, in administering the "use" allowed under the order of respondent court, are conducting "proceedings" under that order. They come within the two decisions of the federal courts for the reason that under the provisions of the constitution, as we have analyzed them, the officers are in effect but the agents of respondent court in the administration of the use. They are to our minds as well within the broad lines of the quotations approved by the supreme court, and especially within the definition taken from Anderson's Dictionary of Law.

The four officers make some points which are in effect covered by what we may have said already, but one of them seems, in addition, to merit some specific attention. After the extended discussion which we have bestowed upon the really controlling question in the case, however, we shall be brief in our treatment of the particular point now in question. [4] It is contended that the officers may not be punished for a contempt because they are not parties to the proceeding for review. If that were so, no one could ever be punished for a violation of the terms of the *supersedeas* which may incontrovertibly be made part of a writ of review under sections 1071 and 1072 of the Code of Civil Procedure, with the single exception of cases in which the proceedings to be reviewed were those of an "officer." It is provided that "The writ may be directed to the inferior tribunal, board or officer [whose proceedings are sought to be reviewed], or to any other person having the custody of the record or proceedings sought to be certified" (Code Civ. Proc., sec. 1070). Where the respondent is a court or a board the writ should not be directed to the judge of the court nor to the members of the board (4 Cal. Jur., tit. Certiorari, sec. 60, and notes). Individuals who are not named in writs of injunction are frequently punished for a violation of their terms. It is necessary only that they should have acted as the agents of persons named in a writ

of injunction and should have had knowledge of its existence
and terms.   Such, we apprehend, is the situation of the four
state officers here.

The officers cite many authorities in opposition to the
views which we have expressed.   It will be found, however,
that the cases cited by them fall into two classes: First, those
in which the writ of review contained no *supersedeas* clause
and in which the only point involved was whether the writ,
without such a clause, had any effect as a *supersedeas;* and,
second, those in which an attempt was made by writ of re-
view, either with or without *supersedeas* clause, to annul or
vacate some act which had been completed under the order
desired to be reviewed.   This case falls in neither of those
classes.

Although we have reached the conclusion that the four
officers of the state are guilty of a contempt, we are of the
opinion that their punishment should be but nominal.   In
exercising the "use" of the property covered by the pro-
posed right of way they have acted in good faith under the
advice of their counsel, and in the belief that they were not
within the inhibition of the *supersedeas* clause of the writ of
review.   Under all the circumstances of the case it is more
important that the four officers be furnished, through this
expression of our views, with a guide for their future con-
duct, than that they be subjected to any substantial punish-
ment for contempt.

We now mention the second of the two questions to which
we referred early in this opinion.   Petitioners ask that we
now issue a *supersedeas* to prevent the agents of the state
from acting further, and until the termination of the pro-
ceeding for review, under the "use" allowed by the order of
respondent court authorizing the possession and use of the
land covered by the proposed right of way.   This motion
was made out of an abundance of caution and in view of the
possibility that we might determine that the four officers
were not within the *supersedeas* clause of the writ of review.
The motion falls to the ground because of the conclusion we
have reached as to the effect of the *supersedeas* clause.

It is ordered that A. B. Fletcher, N. D. Darlington, C. A.
Whitmore, and G. C. Mansfield be, and each of them hereby
is, adjudged guilty of a contempt of this court, and each of

60 Cal. App.—42

them hereby is ordered to pay a fine of ten dollars because thereof. The motion for an injunction or *supersedeas* is denied.

Finlayson, P. J., and Craig, J., concurred.