[L. A. No. 20508. In Bank. Sept. 23, 1948.]

THE METROPOLITAN WATER DISTRICT OF SOUTH-ERN CALIFORNIA, Appellant, v. E. BENNETT ADAMS et al., Respondents.

[L. A. No. 20509. In Bank. Sept. 23, 1948.]

THE METROPOLITAN WATER DISTRICT OF SOUTH-ERN CALIFORNIA, Appellant, v. LAWRENCE HOLMES et al., Respondents.

[L. A. No. 20510. In Bank. Sept. 23, 1948.]

THE METROPOLITAN WATER DISTRICT OF SOUTH-ERN CALIFORNIA, Appellant, v. W. F. CLAY et al., Respondents.

[ L. A. No. 20511. In Bank. Sept. 23, 1948.]

THE METROPOLITAN WATER DISTRICT OF SOUTH-ERN CALIFORNIA, Appellant, v. ASHLEY A. ASH et al., Respondents.

James H. Howard, General Counsel, Charles C. Cooper, Jr., Assistant General Counsel, and H. L. Thompson, Special Counsel, for Appellant.

Earl Redwine, County Counsel, for Respondents.

SCHAUER, J.—Plaintiff, the Metropolitan Water District of Southern California, seeks to collect approximately $30,000 which is being held in the treasury of the county of Riverside and which, it is claimed, belongs to the water district. The moneys involved constitute interest on funds which were deposited with the clerk of the court at the commencement of proceedings in eminent domain, in accord with constitutional provision, as security in order to obtain immediate possession and use of the subject land. The amounts deposited in court were turned over to the treasurer of the county of Riverside who deposited the money in various banks where it drew the interest now the subject of controversy. The water district filed its application for "return" to it of the interest as a part or continuation of the eminent domain proceedings, and at that time brought in as parties to the action the clerk of the superior court, the county auditor and the county treasurer of the county of Riverside, hereinafter referred to as "respondents."

The trial court denied the plaintiff's application on the ground that if the water district did have a cause of action against the county officials above mentioned for the alleged interest, it could proceed only in a separate and original suit against those parties. We have concluded that moneys deposited with the court as in the nature of security or a *cash bond* in order to gain possession of the subject property in eminent domain proceedings are legally in the custody and within the control of such court and that any interest paid on such moneys by a bank in which they are deposited attaches in ownership to the owner of the moneys and, being in the custody of the court, is, like the principal sum, subject to the court's control. A separate action to determine the disposition of such interest is, therefore, under the circumstances of this case, unnecessary. We further conclude that in making

the bank deposits, the county treasurer was representing the court and, acting as the court's ex-officio treasurer, was depositing moneys belonging to the water district.

Plaintiff water district, a public and municipal corporation, instituted, in the period from 1934 to 1936, four actions in eminent domain to condemn an aggregate of some 400 parcels of land in Riverside County to be used as a reservoir site. After filing the complaints in eminent domain and in order to gain immediate possession and use of the land, the water district, pursuant to section 14 of article I of the Constitution, deposited with the clerk of the superior court in the county of Riverside sums of money for the various parcels aggregating approximately $500,000. The court maintained a record of such funds, hereinafter sometimes referred to as "security deposits," under an account entitled "Trust Fund." These moneys were turned over to the treasurer of the county of Riverside who commingled them with other funds and within a short time thereafter deposited all the funds in various banks in the immediate area.

In making such bank deposits the county treasurer assertedly acted pursuant to the Depositary Act (Stats. 1933, p. 642; 1 Deering's Gen. Laws, Act 2834a) which provides in section 1 that "All moneys *belonging to or in the custody of* any county, city and county, . . . or other public or municipal corporation within the State, including all moneys . . . paid to the treasurer of any county . . . or other official having authority to . . . receive the same, for the payment of principal, interest or penalties of bonds required by law . . . to be paid to . . . such . . . official . . . shall, so far as possible, be deposited in such State or National bank or banks . . . as the treasurer of the county, city and county, . . . or other official having the *legal custody* thereof, shall select for safekeeping of such deposits, and any sum so deposited shall be deemed to be in the treasury of such county, city and county, town, municipality or other public or municipal corporation . . . Such depositary bank or banks shall be selected from those agreeing to pay the highest rate of interest . . . for such deposits . . . Such deposits, with interest thereon, shall be subject to withdrawal at any time upon the demand of the treasurer or other authorized official [subject to certain immaterial notice requirements in the case of inactive or term accounts]." (Italics added.)

The condemnation suits proceeded to trial and judgment was rendered on the issues of compensation and damage to the property owners. In *Metropolitan Water District* v. *Adams* (1940), 16 Cal.2d 676, 680 [107 P.2d 618], it was determined that if possession is taken by the condemnor prior to judgment then just compensation for the taking of property includes not only the actual value of the property, but also the actual cash value of the use of said property from the date of taking possession thereof up to the date of judgment. Legal interest, awarded by the jury in that case, was held a proper basis for the measurement of the compensation for use of the property. The interlocutory judgments entered in favor of the various landowners were satisfied in the main by deposit into court of moneys to be turned over to defendant property owners. Some of these ''judgment deposits'' were effected by a withdrawal by plaintiff of amounts on deposit as security and a redeposit in favor of the landowner.

No insurmountable problem is presented regarding the amount of interest attributable to the deposits. Because of the commingling and the procedure followed by the county treasurer, it is impracticable if not impossible to trace or identify the particular funds deposited with the court by the appellant and to determine the exact amounts of interest received by the county for the use of those specific funds for the various periods. There is evidence, however, as to the total amounts on deposit from time to time in various banks and the amount of interest earned thereon, and the amount of court deposits or ''security deposits'' in the hands of the county treasurer at various times. Using a proportionate share theory, the interest fairly allocable to the funds deposited by the water district apparently can be determined with reasonable accuracy.

When all defendant property owners had been paid and the cases were otherwise concluded, the plaintiff water district asked for a return of the unwithdrawn money deposited as security at the commencement of the actions. By March, 1942, the principal of all moneys so deposited had been returned to the water district. On March 7, 1944, the district filed ''an application for orders for return to plaintiff of interest earned on moneys deposited by plaintiff in court as security to enable plaintiff to take immediate possession and use of the properties under condemnation, and for order to show cause why such orders should not be made.'' Requested

were an order directing the clerk of the court to withdraw moneys on deposit and to return and pay same to the plaintiff and an order directing the county auditor to draw a warrant on the treasurer in favor of the plaintiff for the "said amount" and directing the treasurer to honor such warrant. In a memorandum opinion the trial judge denied the plaintiff's application, stating that the judgments in the eminent domain proceedings had become final, that no moneys remained on deposit which were originally deposited to gain possession and that, if the water district is entitled to share in the interest received by the county treasurer on his bank accounts, it must proceed in separate actions brought against the proper parties.

If for any reason the original deposits for security or a part thereof had remained in the court's custody, it is conceded by the defendants that the water district could have applied for withdrawal of the same even after judgment became final. As said in *G. H. Deacon Inv. Co.* v. *Superior Court* (1934), 220 Cal. 392, 397 [31 P.2d 372], quoting from *Marblehead Land Co.* v. *Superior Court* (1923), 60 Cal.App. 644, 653 [213 P. 718], "It is certain that, when such money deposits are made and the consequent order for possession and use follows, the court making the order has exclusive control of the money deposited. The cash is to be deposited merely as security [that is to say, as a cash bond] for the immediate payment of compensation when the amount of compensation is ascertained . . . If the compensation is not paid . . . to the defendant immediately, or perhaps within a reasonable time, . . . then the court must make some order transmuting the money deposited from security into payment . . . If the compensation be promptly paid by the plaintiff, then the court, perforce, must order the cash to be returned to the plaintiff. The money is undoubtedly in the possession and control of the court until condemnation decree, and perhaps until a reasonable time thereafter." ██ Appellant water district contends that the court has jurisdiction to direct the payment of the moneys involved here because the interest was an incident or accretion, and became a part, of the deposits made in court; that the principal fund and all increments or accretions were under the exclusive control of the court, to be exercised in the particular action in which the deposits were made; and that the court has jurisdiction to dispose of the funds through special orders after final judgment. The court having continuing jurisdiction to dis-

pose of the "security deposits" after final judgment (*G. H. Deacon Inv. Co.* v. *Superior Court* (1934), *supra,* 220 Cal. 392, 397), no reason appears why the interest, if it follows the principal as an accretion thereto in this case, should not also be so disposable.

The superior court has no treasury or treasurer of its own and the Legislature has directed that "Whenever money is paid into or deposited in the court, the same must be delivered to the clerk . . . [who] must, unless otherwise directed by law, deposit such money with the *county treasurer, to be held by him subject to the order of the court.*" (Italics added; Code Civ. Proc., § 573.) Also relating to deposits with the court is section 188 of the Code of Civil Procedure which provides, "When money is deposited with the clerk . . . of any court . . . or when any money is to be paid to the treasurer pursuant to any provision of this code, such money shall be forthwith deposited with such treasurer and a duplicate receipt of the treasurer therefor shall be filed with the auditor . . . When any money so deposited is to be withdrawn or paid out, the order directing such payment or withdrawal shall require the auditor to draw his warrant therefor and the treasurer to pay the same."

 Prior to the determination of the applicability of the Depositary Act to moneys deposited with the county treasurer pursuant to the above noted section of the Code of Civil Procedure, it is necessary to clarify the status of the moneys on deposit as security and to assign to the public bodies their various interests therein. It must be kept in mind that the water district deposited the moneys pursuant to a statute the pertinent purpose of which is to protect the defendant property owners against any failure by plaintiff to comply with such judgment as may eventually be rendered. All that the court can claim in the funds is the naked security title which it holds for the property owners. The court obtained possession, but it had no right to make use of the funds other than for the limited purpose for which they were deposited; all that it could do, in the absence of default by plaintiff, was hold the funds in safekeeping to be returned to the plaintiff water district when and if it (the district) met all its obligations regarding the land of defendant property owners. The plaintiff, for loss of possession and use of the moneys, in one sense may be said to have gained the immediate use and possession of the lands, but for title to those lands it was required to pay the actual value, together

with interest thereon from the date of taking; actually the money deposited is essentially in the nature of a cash bond and unless and until the condemnor does something to warrant the court's turning the funds over to the defendant property owners, the money remains the district's property. As stated in *G. H. Deacon Inv. Co.* v. *Superior Court* (1934), *supra*, 220 Cal. 392, 397, "It [the security deposit] is not subject to withdrawal either by the plaintiff or defendant in the condemnation proceeding until after the entry of the final decree of condemnation, and then only by order of the court in which it is deposited." Also, in *Marblehead Land Co.* v. *Superior Court* (1923), *supra*, 60 Cal.App. 644, 653, the court, as above noted, said, "It is certain that, when such money deposits are made and the consequent order for possession and use follows, the *court making the order has exclusive control of the money deposited.*" (Italics added.)

The respondents argue that the deposits do not belong to the water district because while in the hands of the court it is impossible to determine to whom they will go eventually. To whom the "security deposits" might eventually be "transmuted" is not the question here. The defendant property owner has the legal right to have adequate deposits maintained as in the nature of a cash bond or security to assure the payment of the final judgment but he has no ownership or right of possession or other interest whatever in the funds until and unless the plaintiff defaults and the court makes an appropriate order. To that moment, at least, the moneys *belong* to plaintiff water district and the court acts solely as a trustee or bailee, holding the moneys as the property of the plaintiff water district, without any divestiture of the district's title, with power to "make some order transmuting the money deposited from security into payment" if the plaintiff should default but bound to return the plaintiff's property if no default occurs. (See *Marblehead Land Co.* v. *Superior Court* (1923), *supra*, 60 Cal.App. 644, 653.) For safekeeping the court is directed to place the money with the county treasurer "to be held by him subject to the order of the court." To the county treasurer the court gave only actual custody, bare possession; it had no power to give the treasurer or the county the beneficial title to the money and such money still belongs to the water district (and, in this case, as previously noted, the balance of principal has been repaid).

■ Respondents contend that in making the deposits in the banks the county treasurer was depositing money which was in the custody of the county, was acting directly as county treasurer, representing the county and its treasury, and, therefore, the interest on funds deposited belonged to the county. It is clear that the funds were not in the custody of the county as such, for the sums remain subject to the order of the court, and the county treasurer in handling the funds must look to the court for direction; the county treasurer is in effect the treasurer of the court, an ex-officio officer, and holds the money for the court, not for the county. The court, not the county board of supervisors, has control of the money. (See *Pomona City School Dist.* v. *Payne* (1935), 9 Cal.App.2d 510, 514 [50 P.2d 822], where the county treasurer, while handling the funds of a school district, was held to be ex-officio treasurer for the school district.)

While in the custody of the treasurer, the latter, wrongfully or rightfully, placed the "security deposits" in banks where they drew interest. (§ 1 of the Depositary Act.) ■ Generally, mere deposit in court does not give rise to the right to receive interest. In the absence of a statute which, in effect, accretes sums to amounts deposited, it is conceded by plaintiff water district that no claim would arise for return of other than the original deposit. Civil Code, section 1915, provides: "Interest is the compensation *allowed by law* or fixed by the parties for the use, or forbearance, or detention of money." (Italics added.) In 30 American Jurisprudence, page 8, it is said: "By modern decisions, interest is allowed only on the ground of a contract . . . or as damages for the detention of money . . . *or by statutory provisions.*" (Italics added.) In the present case, at least prior to plaintiff's application for payment, there was no wrongful detention of funds belonging to the water district and (unless implied by statute) there is no contract for the payment of interest. A statute (Code Civ. Proc., § 573) does provide that funds on deposit in court shall be turned over to the county treasurer, however, and the Depositary Act, pursuant to which the bank deposits were made, does provide for the payment of interest thereon.

■ The plaintiff district contends that "it is probable that the Depositary Act did not authorize Treasurer to deposit these monies in bank," that in making the deposits, the county treasurer was representing the court, not the county, and that as accretions to the funds belonging to ap-

pellant, under ordinary trust principles, the interest should follow the principal to the treasury of the water district. The Depositary Act states that *"All moneys belonging to . . . any public or municipal corporation* within the state . . . shall so far as possible be deposited in such . . . bank or banks . . . as the . . . *official having legal custody thereof*, shall select for safekeeping of such deposits." (Italics added.) The county treasurer did not deposit moneys which were "in the custody of the county," as claimed by respondent officials, but rather he deposited moneys entrusted to him by the court, acting as the court's treasurer but "belonging to . . . [a] public or municipal corporation," to wit, the Metropolitan Water District of Southern California. The Depositary Act, authorizing placement of public funds in state or national banks, was passed primarily to secure the safety of such public moneys. It would seem that its purpose would not be fully consummated if it were construed as authorizing the county treasurer to deposit at interest funds coming into his custody as an official of the county and as ex-officio treasurer of school or other districts but not 'including funds in his custody which belong to a public or municipal corporation, simply because the funds entered his hands via an eminent domain proceeding from the court as its treasurer.

There remains the question of who was the proper recipient of the interest under section 2 of the Depositary Act. That section provides: "Interest on all moneys deposited as herein provided shall belong to and shall be paid quarterly into the general fund of the county, city and county, city, town, municipality or other public or municipal corporation *represented by the officer making such deposit*, except where the law otherwise directs." The solution of the above question, therefore, resolves itself into a determination of which "public body" the county treasurer was representing in making the bank deposits under section 1 of the Depositary Act. The two possible contenders are the county and the court (in its representative capacity), who, unfortunately (in the sense that it gives rise to this dispute), have the same official authorized to act as the custodian of funds.

The appellant water district relies on *Pomona City School District* v. *Payne* (1935), *supra,* 9 Cal.App.2d 510, 514, where it was held that a school district is entitled to interest on funds in the custody of the county treasurer and deposited by him in bank accounts. In that case the court stated: "It is pointed out . . . that [assertedly by virtue of the language

of the statute] the interest belongs to the county, being the public body 'represented by' the county treasurer who made the deposit. This is too narrow a construction of the words 'represented by.' Certainly the county treasurer, as custodian of school funds, 'represents'—i. e., 'exercises power derived from another' (*Davis* v. *Davis*, 26 Cal. 23 [85 Am. Dec. 157])—the school district whose funds are in his care, and acts as its agent, and is *ex-officio* treasurer for the school district." (See also *Board of Law Library Trustees* v. *Lowery* (1945), 67 Cal.App.2d 480, 482 [154 P.2d 719], which follows the Pomona holding in the case of a law library fund; the county treasurer was held to be an ex-officio treasurer of the law library fund.) The appellant water district contends that no sound distinction can be made between funds entrusted to the county treasurer by a school district or the trustees of a law library and funds entrusted to him by a court. This contention appears sound. Aside and separate from his duties as official treasurer for the county, the county treasurer, by legislative direction, is in effect ex-officio treasurer for public bodies without treasurers of their own, including the superior court. In other words, though these public bodies are in their purposes and functions dissimilar, yet their reasons for depositing their funds, or moneys coming into their custody, in the county treasurer's hands, are the same, namely, that none has a treasurer of its own, and for convenience and safekeeping the county treasurer has been designated the proper official to care for them. All are directed by statute to so deposit their funds: the court by Code of Civil Procedure, section 573, the school districts by Education Code, sections 5002 and 7517, and the trustees of the library fund by Business and Professions Code, section 6320. It is to be noted that the applicable statute here (Code Civ. Proc., § 573) expressly directs that "The treasurer must keep each fund distinct, and open an account for each." We conclude that it is the superior court which in the view of the law holds the entire sum, the principal together with its accretions of interest, as custodian for the water district, and, inasmuch as the object of such retention has ended, the court must return to the water district the entire sum, or any balance thereof, which it may determine remains on hand.

It may be added that in the interpretation of statutes, when two constructions appear possible, this court follows the rule of favoring that which leads to the more reasonable

result. The respondents' interpretation of the statute in issue results in a windfall to the county, substantially undeserved and unearned. On the other hand, the plaintiff-condemnor, if it takes possession as here, must pay interest on the amount ultimately awarded to the landowner from the date of its taking possession, but under respondents' interpretation would receive no interest on the funds deposited by it as security for the claim of the landowners. We do not here reach the question, and intend no implication concerning it, as to whether the Legislature legally can or cannot, as compensation to the county for the use of its treasurer, his time and his services, provide for some remuneration to be deducted from interest earned on funds deposited with him. No such provision is present here, and there is no indication or evidence that such may have been the purpose of section 2 of the Depositary Act. (*Pomona City School District* v. *Payne* (1935), *supra*, 9 Cal.App.2d 510, 515.)

For the reasons which have been stated the order appealed from is in each case reversed and the cause is remanded to the trial court for further proceedings not inconsistent with the views hereinabove expressed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

Edmonds, J., did not participate in the decision of this case.

Respondents' petition for a rehearing was denied October 18, 1948. Edmonds, J., did not participate.