[Civ. No. 7334.   Fourth Dist.   April 8, 1964.]

SAN. BERNARDINO VALLEY MUNICIPAL WATER DISTRICT, Plaintiff and Appellant, v. MEEKS AND DALEY WATER COMPANY et al., Defendants and Respondents.

Taylor, Smith & Williams, Taylor & Smith, Robert J. Webb and Edward F. Taylor for Plaintiff and Appellant.

Clayson, Stark, Rothrock & Mann and Donald D. Stark for Defendants and Respondents.

STONE, J.†—The defendants, Meeks & Daley Water Company and Agua Mansa Water Company, are mutual water companies engaged in delivering water to their stockholders only, at cost. Plaintiff, by this proceeding in eminent domain exercised pursuant to the power vested in it by the Municipal Water District Act of 1911, seeks to condemn the prescriptive and appropriative water rights and the diversion facilities of defendant companies. The diversion works of defendants are all located within the County of San Bernardino and within the boundaries of the San Bernardino Valley Municipal Water District. However, only 5 per cent of the water that defendants are entitled to take under the water rights sought to be condemned is used in San Bernardino County, while 95 per cent of said water is used in Riverside County. Water is transported from the points of diversion to various places of use by artificial channels, canals and pipelines owned by defendants or in which defendants have an interest.

Defendants assert that the water rights sought to be condemned include easements, canals, pipelines, pumping stations and other facilities and equipment necessary to transport water to the places of use. Further, they allege that most of these physical facilities for the transportation of water are located in Riverside County, where 95 per cent of the water defendants divert under their water rights is used. Upon these grounds defendants pleaded as a special defense that plaintiff did not obtain the consent of the Board of Supervisors of Riverside County to bring this action, as required by subdivision 7a of section 12 of the Municipal Water District Act of 1911.

Plaintiff's counterargument is that the situs of a water right is at the point of diversion and that since the points of diversion of all of defendants' water rights are in the County of San Bernardino, it is unnecessary to obtain the consent of the Board of Supervisors of Riverside County to condemn them; that the place of use of water is irrelevant in determining jurisdiction to condemn water rights.

†Assigned by Chairman of Judicial Council.

Counsel stipulated that because the determination of this special defense is vital, the court should try it before setting the rest of the issues for trial.

The trial court sustained the special defense and held, in substance, that a water right is more than a right to divert water, "the right does not exist without the use," and that plaintiff, in condemning the water rights of defendants, is required to also condemn the distribution system which carries 95 per cent of the water to places of use in Riverside County. Specifically, the trial court found: ". . . that the scope and nature of the smallest single parcel is a single indivisible parcel of real property including the point of diversion, and the system of transmission and delivery to and including the point of use."

Further, the trial court held that the consent of the Board of Supervisors of Riverside County is a condition precedent to plaintiff's right to condemn the property of defendants in that county, a consent plaintiff did not obtain.

Plaintiff premises its argument that appropriative or prescriptive water rights become property at the point of diversion upon a series of cases holding that the situs of water rights for tax purposes is the place of diversion. (*City & County of San Francisco* v. *County of Alameda*, 5 Cal.2d 243 [54 P.2d 462]; *Waterford Irr. Dist.* v. *County of Stanislaus*, 102 Cal.App.2d 839 [228 P.2d 341]; *Alpaugh Irr. Dist.* v. *County of Kern*, 113 Cal.App.2d 286 [248 P.2d 117]; *Oakdale Irr. Dist.* v. *County of Calaveras*, 133 Cal.App.2d 127 [283 P.2d 732]; *North Kern Water Storage Dist.* v. *County of Kern*, 179 Cal.App.2d 268 [3 Cal.Rptr. 636].) However, in each of the cited cases the court made a determination of the situs of water rights for purposes of taxation only. This is made clear in *County of Tuolumne* v. *State Board of Equalization*, 206 Cal.App.2d 352, at page 370 [24 Cal.Rptr. 113], by the following language: "A number of California cases hold that *for tax purposes* the situs of water rights is the place of diversion." (Italics added.)

Plaintiff would generalize the isolated concept of taxation of water rights, a concept springing from a need to remedy a very specialized circumstance—the social and economic consequences of one county's obtaining water rights in another county and removing that water right as a source of tax revenue. Usually the water is taken from a mountain county already hard-pressed for tax revenue because of the limited amount of land suitable for tillage or industry, and trans-

ported to another county more favorably situated for industrial and urban development but without sufficient water. California has permitted the transportation of water under these circumstances, but it has offset the deprivation to counties of origin by providing that water rights which were taxable when acquired remain taxable at the point of diversion, even though acquired by another county, city and county, or municipal corporation. (Cal. Const., art. XIII, § 1; *City & County of San Francisco* v. *County of Alameda, supra,* at p. 245; *County of Tuolumne* v. *State Board of Equalization, supra,* at p. 364.) The tax cases cited by plaintiff make no attempt to define the characteristics of a water right, other than in relation to its situs for tax purposes.

Thus plaintiff's syllogistic argument which concludes that water rights are property subject to condemnation at the point of diversion, is based upon the erroneous premise that tax situs determines the character of water rights as property. Inherent in this error is plaintiff's concept of an appropriative or prescriptive water right as physical property or as a static entity at the place of diversion. A water right itself has neither physical form nor substance; it is more nearly correct to define it as a legal interest or a legal right giving rise to a legal relationship.

Perhaps the most persuasive factor in our consideration of the character of the water rights here involved is that as appropriative and prescriptive rights, they are usufructuary. That is to say, there is no right to any particular water flowing in the stream, only a right to take from the stream a certain amount of flowing water; a right that does not come into being until both the means of diverting and the means of using water have been completed. (*County of Tuolumne* v. *State Board of Equalization, supra; Eddy* v. *Simpson,* 3 Cal. 249 [58 Am. Dec. 408]; Hutchins, The California Law of Water Rights, p. 161.) The rule is stated in *Inyo Consol. Water Co.* v. *Jess,* 161 Cal. 516, at page 519 [119 P. 934]: ". . . a right to the use of running water does not vest in possession at common law, until there has been an actual diversion and *beneficial use* of the water." (Italics added.) (See also *Yuba River Power Co.* v. *Nevada Irr. Dist.,* 207 Cal. 521, 527 [279 P. 128].)

Clearly, construction of diversion works alone is not enough; no appropriative or prescriptive right to water matures until and unless a means of transporting the water

to the place of use is also constructed. Since use of water is the *sine qua non* of an appropriative or prescriptive water right, it follows that the transportation system necessary to get the water to the place of use is as much a part of such water right as are the works constructed at the point of diversion.

Ninety-five per cent of the water available under the water rights which plaintiff proposes to condemn is used in Riverside County. Therefore the facilities for transportation of the water in Riverside County are integral to the use of the water and, hence, to the water right itself. It is immaterial that the place of use of appropriative and prescriptive rights can be changed and, also, that the point of diversion can be changed under proper circumstances. Plaintiff here seeks to condemn water rights which have definite points of diversion and definite places of use. Upon these facts the case must be determined.

The facilities for transporting water in Riverside County focus attention upon another critical issue in the case, which arises because plaintiff alleges that it does not intend to supply water to the present shareholders of defendants.

Plaintiff leaves no doubt as to its intention to repudiate defendants' obligations by the allegation in its complaint and the assertion in the agreed statement of facts that it intends to retain for use within the boundaries of plaintiff district in San Bernardino County, the 95 per cent of the companies' water now used in Riverside County.

The question arises: Can a municipal water district condemn the water rights of a mutual water company or any private water company at the point of diversion and refuse to assume the obligations of such water company to deliver water to its shareholders? We hold that it cannot.

We believe the statute empowering municipal water districts to condemn water companies imposes a duty, at least by implication, upon the condemner to continue water service to shareholders of a condemned water company. No cases have been found directly concerned with the transfer of the property of a private water company to a municipal water district, but there are many cases holding that a city which takes over a private water company must continue to serve those who have a right to receive water from the company. (*People* ex rel. *City of Downey* v. *Downey County Water Dist.*, 202 Cal.App.2d 786, 796 [21 Cal.Rptr. 370]; *Durant* v. *City of Beverly Hills*, 39 Cal.App.2d 133, 137 [102 P.2d

759]; *South Pasadena* v. *Pasadena Land & Water Co.*, 152 Cal. 579, 588 [93 P. 490].)

The cited cases admittedly concern cities, and not municipal water districts, but both subdivisions 7 and 7a of section 12 of the Municipal Water District Act, which vest the power to condemn water rights and waterworks in a municipal water district, provide: "In proceedings relative to the exercise of such right, the district shall have all of the rights, powers and privileges of a city; . . ."

█ Rights and powers conferred by law are counterbalanced by duties and obligations commensurate therewith. Accordingly we are impelled to hold that the Municipal Water District Act of 1911, empowering municipal water districts to condemn private or mutual water companies with all of the "rights, powers and privileges of a city," by implication subjects such districts to the obligations, burdens and duties which are imposed upon a city exercising identical rights.

█ If we are to view in full perspective the rights of a shareholder of a mutual water company that is being condemned, we must be mindful that the interests of a shareholder are not identical to the interests of the company. The water company has an obligation to deliver water, while the shareholder has a right to receive water. The company has no interest in the affected lands of the shareholders; it cannot claim compensation because orchards may dry up and die or because a householder is deprived of water. █ No court can remain indifferent to the rights of individual shareholders so affected, and we take cognizance of plaintiff's allegation that it will intentionally impair defendants' obligations of contract to the shareholders. This amounts to the taking of a shareholder's property without just compensation, in violation of both the state and federal Constitutions.

█ To obviate this result plaintiff of necessity must seek condemnation of the transportation facilities of defendants in Riverside County, as well as the diversion structures in San Bernardino County.

Finally, plaintiff argues there is no statutory requirement that a municipal water district must, in condemning property in another county, obtain the consent of the board of supervisors of the county in which the property is located; further, that since there is no such statutory requirement, the courts cannot impose one. We therefore examine section 12 of

the Municipal Water District Act of 1911 which enumerates the powers of a municipal water district incorporated under the act. Section 12 had 21 numbered subdivisions, of which subdivisions 7 and 7a relate to condemnation proceedings of various kinds. Subdivision 7 specifically refers to the right to condemn, among other things, existing waterworks, water system, waters, and water rights owned by any person, firm or private corporation. Subdivision 7a provides: *"To have and exercise the right of eminent domain and in the manner provided by law for the condemnation of private property for public use, to take any property necessary to carry out any powers of the district.* In proceedings relative to the exercise of such right, the district shall have all of the rights, powers and privileges of a city; provided, the district, in exercising such right, shall in addition to the damage for the taking, injury, or destruction of property, also pay the cost of removal, reconstruction, or relocation of any structure, railways, mains, pipes, conduits, wires, cables or poles of any public utility which is required to be removed to a new location. *A municipal water district shall not exercise the right of eminent domain, under this subdivision, for the condemnation of property outside the boundaries of the district, unless it first obtains the consent thereto of the board of supervisors of the county in which such property is located;"* (Italics added.)

The thrust of plaintiff's argument is that the last sentence of subdivision 7a is confined to the condemnation matters specifically mentioned in that subdivision, and that it cannot be applied to the condemnation of water and water rights. However, the first sentence of subdivision 7a, which we have italicized for emphasis, clearly refers to all powers of condemnation vested in a municipal water district and exercised by the right of eminent domain. To accept plaintiff's contention that consent of a board of supervisors is restricted to the cost of removal, reconstruction or relocation of the structures specifically mentioned in subdivision 7a would be to destroy the requirement under the guise of a limitation. Plaintiff's narrow interpretation loses sight of the evil against which the language of the last sentence of subdivision 7a is designed to guard. We perceive a legislative intent to prevent indiscriminate condemnation by a municipal water district of water and water rights in other counties. This is accomplished by requiring a district to first obtain the consent of the board of supervisors of the county in

which such water or water rights are located. ▮▮▮▮ When we consider the consequences, as we must (*Estate of Ryan,* 21 Cal.2d 498, 513 [133 P.2d 626]; *Metropolitan Water Dist.* v. *Adams,* 32 Cal.2d 620, 630 [197 P.2d 543]; 45 Cal.Jur.2d § 122, p. 631), that might flow from plaintiff's interpretation of subdivision 7a, there can be little doubt that the Legislature intended the last sentence of 7a to apply to the first sentence of that subdivision, that is, the condemnation of any private property for public use, and not just the relocation of certain structures. Otherwise nothing except physical obstacles would prevent a municipal water district in one end of the state from condemning the water rights of a private or mutual water company at the other end of the state or in any other place within the state. It is unreasonable to impute to the Legislature an intent that a board of supervisors must stand by helplessly as its lands and people are deprived of water by reason of condemnation of the water rights of mutual or private water companies by municipal water districts in other counties.

The possibilities for serious undesirable, even unjust, consequences proliferate when we consider plaintiff's argument that there is no boundary restriction upon a municipal water district's right to condemn a water company, in the light of its contentions that it may condemn a water right at the point of diversion by condemning only the diversion facilities and, further, that it need not honor the right of a water company shareholder or a water user to continue to receive water after condemnation.

Plaintiff tells us that our interpretation of the legislative intent expressed by subdivision 7a would, in practical application, result in the complete frustration of condemnation by a municipal water district of mutual or private water companies lying outside the boundaries of the county in which the district is located. It is suggested that no board of supervisors would ever consent to the condemnation of a mutual water company under such circumstances. It cannot be assumed that a public body will act unreasonably and deliberately frustrate a legislative enactment of the state. Yet this court would be unrealistic if it ignored the human equation in this water-conscious state. But the fact is that the Legislature in delegating to a municipal water district the authority to condemn private and mutual water companies, delimited that power by subdivision 7a. Even if the choice

were ours to make, as a matter of public policy we should adopt the restrictive limitation contained in subdivision 7a. We think it serves the interests of the people as a whole by forestalling the possibility of a state-wide scramble by municipal water districts to obtain water rights by indiscriminately condemning private or mutual water companies.

Perhaps a satisfactory solution lies in legislation to eliminate the requirement for consent by a board of supervisors and, in lieu thereof, authorize a court or one of the state water agencies to determine whether the condemnation of a private or mutual water company in one county by a municipal water district in another county would serve the best interests of the people of the State of California. This would be in accord with article XIV, section 3, of the Constitution, which declares that "because of the conditions prevailing in this State the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable." The Legislature has declared by Water Code sections 104, 105 and 106, that the people of the State of California have a paramount interest in the use of all water of the state, that the protection of the public interest in the development of the water resources of the state is of vital concern to the people, and that it is the established policy of the state that the use of water for domestic purposes is the highest use of water and the next highest is for irrigation. Also, the Supreme Court stated, in *Miller & Lux* v. *San Joaquin L. & P. Co.*, 8 Cal.2d 427, at page 435 [65 P.2d 1289], that: "It is well settled in this State that the law relating to the reasonable and beneficial use of water is to be applied in settlement of all water controversies."

In any event, we think it clear from the foregoing discussion that if the requirement in subdivision 7a for consent by a board of supervisors to the condemnation of private or mutual water companies by a municipal water district in another county is to be abrogated, such modification should be accompanied by appropriate safeguards. Therefore, if a change is expedient, it must be made by the Legislature, not the courts.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 3, 1964.