[No. E003690. Fourth Dist., Div. Two. Nov. 1, 1988.]

SAN BERNARDINO COUNTY FLOOD CONTROL DISTRICT,
Plaintiff and Respondent, v.
PATRICK F. GRABOWSKI, Defendant and Appellant.

COUNSEL

Goebel, Shensa & Beale and Louis E. Goebel for Defendant and Appellant.

Alan K. Marks, County Counsel, and E. H. Robinson, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

CAMPBELL, P. J.—This is an eminent domain action. Appellant's (Grabowski's) real property is being sought by respondent Flood Control District (District) for a flood control facility. Judgment was entered confirming District's right to acquire the property and awarding Grabowski compensa-

tion for the taking. Grabowski appeals from the judgment and certain postjudgment rulings.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

In December 1981, the Jurupa Hills Redevelopment Project was adopted by the Fontana Redevelopment Agency. This project was intended to permit the eventual "build out" of the Jurupa Hills area of the City of Fontana, in the County of San Bernardino, adjacent to the Riverside county line. More specific development plans were approved by the redevelopment agency the following year. These more specific plans provided for the development of a lesser, included area to be known as the Southridge Village Project (the development) by Ten-Ninety, Ltd., a private developer.

The area in which the development was to be located encompassed a series of natural watersheds and drainage courses that comprise a portion of what is known as the DeClez Channel drainage system—a natural regional flood drainage system that eventually outlets into the Santa Ana River. In order to reach the Santa Ana River, however, the system's drainage discharge must pass through flood control facilities in Riverside County.

Inasmuch as the development was to be largely financed by mortgage revenue bonds issued under a federal financing guarantee program, a federally-mandated environmental impact statement was prepared with respect to the development. During the preparation of this statement, it became clear for the first time that the County of Riverside was unable and unwilling to simply accept the increased storm drainage flows that would be produced by the development.

Engineering discussions then ensued among the City of Fontana, the Fontana Redevelopment Agency, the County of Riverside, and the San Bernardino County Flood Control District to ascertain a solution to the problem of the increased drainage discharge created by the development's

---

[1] Grabowski purports to appeal from the trial court's denial of his motion for a new trial or, alternatively, for a redetermination of interest and an award of attorney's fees. A denial of a motion for a new trial is an unappealable order. (*Fogo* v. *Cutter Laboratories, Inc.* (1977) 68 Cal.App.3d 744, 748-749 [137 Cal.Rptr. 417].) Likewise, a denial of a motion to correct or amend a judgment (in this instance, concerning the computation of interest) is itself usually an unappealable order. (*Simmons* v. *Santa Barbara Ice etc. Co.* (1958) 162 Cal.App.2d 23, 28 [327 P.2d 141].) A postjudgment order determining costs (which, under the Eminent Domain Law [pt. 3, tit. 7, Code Civ. Proc.], may include attorney's fees) is appealable. (*Hennessy* v. *Superior Court* (1924) 194 Cal. 368, 372 [228 P. 862].) Thus, we address ourselves below to the two disputed issues raised directly by the judgment (the "right to take" and the proper computation of interest) and to the issue of whether attorney's fees are allowable.

construction. As a result of these discussions, it was determined that the best engineering solution to the problem was to build a detention basin upstream of the Riverside flood control facilities to temporarily detain the peak flood flows draining from the development area. In April 1983, the Fontana Redevelopment Agency filed an action in eminent domain to acquire Grabowski's real property, located in the County of Riverside, for the detention basin site.

In July 1983, the Fontana Redevelopment Agency authorized the issuance of federally guaranteed mortgage revenue bonds to finance the construction of the development by Ten-Ninety, Ltd. A few days later, the City of Fontana, the Fontana Redevelopment Agency, Ten-Ninety, Ltd., and Creative Communities (a California corporation which controls Ten-Ninety) entered into an agreement whereby Ten-Ninety agreed (and Creative Communities guaranteed) that Ten-Ninety would pay all of the city's/redevelopment agency's costs in acquiring the Grabowski site and building the detention basin.

In August 1983, the San Bernardino County Flood Control District entered into two agreements with various of the parties already involved in the construction of the development, the net result being that the District (rather than the redevelopment agency) would acquire the detention basin site, that the District would own, operate and maintain the detention basin once it was built, and that Ten-Ninety would bear the full cost of acquiring the detention basin site and constructing the basin itself. Ten-Ninety further obligated itself to pay a substantial portion of the cost of maintaining and operating the basin for the first several years of its existence.

In September 1983, the Fontana Redevelopment Agency abandoned its eminent domain action. That same month, the District noticed a meeting of its governing body (Board) to consider the adoption of a Resolution of Necessity preparatory to filing an eminent domain action to acquire the detention basin site.

On October 10, 1983, the District Board conducted its hearing on a Resolution of Necessity concerning the Grabowski site. Four of the five members of the Board were present. No one appeared to speak in opposition to the adoption of the resolution. All four Board members who were present voted in favor of the resolution. On October 13, 1983, the District filed its eminent domain action—the action here in issue—to acquire Grabowski's property. Grabowski's answer to the District's complaint generally denied the complaint's allegation that a Resolution of Necessity had been validly adopted, but did not raise a Political Reform Act of 1974 (tit. 9,

Gov. Code; hereafter PRA) challenge to the validity of the Board's vote on that resolution. The District obtained "immediate possession" of the property, pursuant to the provisions of the Eminent Domain Law, and construction of the detention basin was undertaken forthwith. The basin was completed in 1984.

In June 1986, trial was commenced in the action. The trial court first heard evidence on Grabowski's objections to the District's "right to take" the property and found in favor of the District on those issues. The jury phase of the trial was then conducted to determine the fair market value of the acquisition site.

In August 1986, judgment was entered in the matter. Although Grabowski had been given the opportunity to submit interest rate data to the court prior to entry of judgment, he had failed to do so. Within a few weeks, Grabowski moved for a new trial, raising again his objections to the District's "right to take" as well as issues relating to the computation of interest on the award and the allowance of attorney's fees. Upon the trial court's denial of his motion, Grabowski filed the appeal now before us.

In the analysis of the issues which follows, additional factual material will be referred to as required.

## ISSUES PRESENTED

This appeal presents the following general and specific issues: (1) Can a challenge based on the provisions of the Political Reform Act be asserted against the validity of an exercise of the eminent domain power by way of a general denial in an answer filed in the eminent domain action?

(2) Did the District meet its burden of establishing the existence of the conditions precedent necessary to a valid exercise of the eminent domain power?

(3) Did the trial court err in denying Grabowski an award of attorney's fees?

(4) Did the trial court err in computing the interest element of the overall condemnation award by using market rates of interest lower than the statutory "legal interest" rate?

DISCUSSION

I

THE POLITICAL REFORM ACT CHALLENGE TO THE DISTRICT'S
EMINENT DOMAIN ACTION

█ The entire framework which exists for the exercise of the inherent governmental power of eminent domain in California is statutory; and these statutory provisions must be strictly complied with when proceeding in an eminent domain action. (Code Civ. Proc., § 1230.020;[2] *Sacramento etc. Drainage Dist.* v. *Truslow* (1954) 125 Cal.App.2d 478, 488 [270 P.2d 928].)

In order to properly file an eminent domain action, a public agency must first have adopted, upon noticed hearing, a Resolution of Necessity which supports the initiation of the action. (§§ 1240.040, 1245.220.) The resolution must be approved by a two-thirds majority of all the members of the condemning agency's governing body. (§ 1245.240.) Inasmuch as the District's Board is a five-member body, a minimum of four votes was needed to approve the District's resolution in favor of the acquisition of Grabowski's property. All four of the Board members who were present at the hearing held to consider the resolution voted in favor of it.

█ ██ ██ █ █ Grabowski contends that one of the votes cast in favor of the resolution was invalid under the conflict-of-interest provisions of the PRA and, thus, that the District's actions failed to meet the mandatory procedural requirements of the Eminent Domain Law.[3] In brief, Grabowski is challenging the District's "right to take." █ ██ ██ ██ Whatever the merits of Grabowski's PRA contention might be, we conclude here that the contention was never properly raised in this eminent domain action.[4] For the reasons discussed below, we hold that a challenge to

---

[2] Unless otherwise specified, all statutory section citations refer to the Code of Civil Procedure.

[3] Grabowski also challenged the validity of the same Board member's vote under the bribery provisions of section 1245.270. The trial court enjoyed the luxury of being able to actually weigh the credibility of the witnesses as they testified on the conflict-of-interest issue, and concluded that the activity in question did not constitute bribery (which, under subdivision 6 of section 7 of the Penal Code, requires a "corrupt intent to influence, unlawfully"). Inasmuch as there was substantial evidence to support the trial court's conclusion, we are bound by that determination.

[4] In oral argument, Grabowski's counsel argued that we are obligated to reach this issue on the merits because the trial court ruled on the issue. Counsel is in error. It is well settled that an appellate court can disregard the theory of the trial below in order to affirm the judgment. (*Superior Motels, Inc.* v. *Rinn Motor Hotels, Inc.* (1987) 195 Cal.App.3d 1032, 1055, fn. 13

a public agency's "right to take" which is based on the provisions of the PRA, and which is asserted after an eminent domain action has been filed, must be raised by way of a compulsory cross-complaint. (§ 426.30, subd. (a); § 426.70.)

■ As noted, Grabowski's PRA challenge to the validity of this eminent domain action constitutes an objection to the District's "right to take" and an attempt to secure judicial review of the validity of the District's Resolution of Necessity. As such, Grabowski's PRA challenge is subject to the provisions of section 1245.255, subdivision (a)(2), which states that judicial review of the validity of a resolution may be obtained, once the eminent domain action is commenced, "by objection to the right to take *pursuant to this title.*" (Italics added.)

Section 1250.350 specifies the conditions under which an objection to the right to take may be asserted in an eminent domain action: "A defendant may object to the plaintiff's right to take, by demurrer or answer as provided in Section 430.30, *on any ground authorized by Section 1250.360 or Section 1250.370. . . .*" (Italics added.)[5] Reference to sections 1250.360 and 1250.370 reveals only two grounds which arguably might serve as a basis for Grabowski's PRA challenge: section 1250.360, subdivision (h), and section 1250.370, subdivision (a). ■ In ascertaining the applicability of these statutory provisions to the situation at hand, we are guided by a fundamental rule of statutory interpretation: "In construing a statute 'we begin with the fundamental rule that a court "should ascertain the intent of the Legislature so as to effectuate the purpose of the law."' [Citations.]" (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].)

Section 1250.360, subdivision (h), permits an objection to the right to take, irrespective of whether a public entity has adopted a resolution of necessity in conformity with the requirements of the Eminent Domain Law,

---

[241 Cal.Rptr. 487], citing 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 322, p. 333.) Our concern is with the trial court's decision, not its reasons. (*Ibid.*)

[5] Section 1250.350 also requires that an objection to the right to take which is asserted by way of an answer set forth the specific grounds and facts underlying the objection. Such a requirement is especially critical in cases, such as this one, where the condemning agency wishes to obtain "immediate possession" of property in order to proceed promptly with the construction of a public project. Condemnors are entitled to know at the outset whether the construction of a project will be placed at risk by a potentially meritorious challenge to the "right to take." Grabowski's answer manifestly fails to meet this requirement with respect to his PRA challenge. However, inasmuch as this pleading defect was not properly challenged below, we reach beyond that shortcoming in our PRA analysis. (*Sommer* v. *Martin* (1921) 55 Cal.App. 603, 610 [204 P. 33]; see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 311, pp. 321-322.)

on "[a]ny other ground provided by law." While such language might superficially seem to permit a PRA challenge to the right to take, an analysis of the legislative intent underlying section 1250.360, subdivision (h) leads us to conclude otherwise. ■ The Legislative Committee Comment (Assem., 1975) makes it clear that section 1250.360, subdivision (h), is intended generally to apply to grounds which arise from other than a California statutory source (such as federal or constitutional grounds) or to grounds which are based on specific statutory condemnation prerequisites set forth in other California codes. Neither category is applicable to Grabowski's PRA challenge.

Section 1250.370, subdivision (a), permits an objection to the right to take, where (as here) the Resolution of Necessity is not entitled to a presumptively "conclusive" effect, on the ground that the public entity "has not adopted a resolution of necessity that satisfies the requirements of Article 2 (commencing with Section 1245.210) of Chapter 4." Article 2, in turn, sets forth three requirements that a valid Resolution of Necessity must "satisfy": (1) it must contain all of the information required by section 1245.230; (2) it must be adopted only after a noticed hearing is held to allow affected property owners to be heard on the matter of the proposed condemnation (§ 1245.235); and (3) it must be adopted by a two-thirds vote of all the members of the condemning entity's governing body (§ 1245.240). Grabowski's PRA challenge is not directed against any of these three requirements. (While the PRA challenge touches on the "taintedness" of one of the votes, it does not question the actual *number* of votes cast. Extensive research into the background of section 1245.240 has failed to reveal any indication that the section was intended to deal with anything other than the actual *number* of votes needed for the adoption of a Resolution of Necessity.)

All of this is not to say, however, that such a PRA challenge cannot be raised at all. While the legislative committee comments to section 1245.255, subdivision (a) (respecting both the original 1975 legislation and the 1978 amendment) make it clear that that subsection is intended to permit Resolutions of Necessity to be *collaterally* attacked for failure to meet the requirements of the Eminent Domain Law itself, these same comments go on to expressly acknowledge that a *direct* attack can be separately made against the validity of a Resolution of Necessity under the PRA.[6] The language used in the Legislative Committee Comments, then, points to a legislative intent to differentiate between direct PRA attacks on Resolutions of Necessity and collateral attacks arising under the provisions of the Eminent Domain Law.

[6] For an in-depth analysis of the legislative background of section 1245.255, see *Anaheim Redevelopment Agency* v. *Dusek* (1987) 193 Cal.App.3d 249, 254-258 [239 Cal.Rptr. 319].

The question then becomes one of determining how such a "direct" attack must be procedurally postured. The answer lies in the general rules of civil pleading which, under section 1230.040, apply to eminent domain proceedings.

 A PRA challenge to the validity of a Resolution of Necessity falls within the range of issues assertable by way of a cross-complaint under section 428.10, subdivision (b). Indeed, such a cause of action is subject to the mandatory pleading requirements applicable to compulsory cross-complaints. (§ 426.30.) It should be noted that section 426.70 makes the compulsory cross-complaint provisions of the Code of Civil Procedure specifically applicable to eminent domain proceedings. Further, as set forth in section 428.40, a cross-complaint must be a separate document.

Therefore, we hold that an objection to a public entity's "right to take" which is based on an alleged violation of the Political Reform Act, and which is not raised until after the eminent domain action is filed, cannot be asserted by way of an answer filed in the eminent domain action but, rather, must be asserted in a compulsory cross-complaint filed separately by the objecting party.[7]

## II

### The Validity of the Exercise of the Eminent Domain Power

As noted above, the proper adoption of a Resolution of Necessity is an essential prerequisite to the filing of a valid eminent domain action. (§§ 1240.040, 1245.220.) The governing body of the condemnor must conduct a noticed, public hearing to consider the public necessity for going ahead with the proposed project. (§ 1245.235.) Following the hearing, the governing body must decide whether to adopt a Resolution of Necessity authorizing the initiation of a condemnation action. If such a resolution is to be adopt-

---

[7] We note in passing that Grabowski's PRA challenge, in addition to having been asserted in a procedurally impermissible manner, was also totally lacking in evidentiary support. Grabowski never made the necessary evidentiary showing in trial that the gift which purportedly invalidated a Board member's vote in favor of the Resolution of Necessity was: (a) $250 or more in value; and (b) "provided to, received by or promised to the public official within 12 months prior to the time when the decision is made." (Gov. Code, § 87103, subd. (c). It is subd. (c) of § 87103, as it was worded and applied in 1983, which pertains to the facts of this case—not subd. (e) of the statute, as argued by Grabowski.) Grabowski's efforts to overcome this evidentiary shortcoming by moving the trial court for a new trial on the basis of "newly discovered evidence" (Code of Civ. Proc., § 657, subd. 4) were correctly rejected by the trial court: Grabowski never made the necessary showing that he could not have produced the evidence in question at the trial through the use of "reasonable diligence." (*Ibid.*)

ed, it must contain a declaration stating, among other things, that each of the following has been found and determined to be the case: "(1) The public interest and necessity require the proposed project. [¶] (2) The proposed project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury. [¶] (3) The property described in the resolution is necessary for the proposed project . . . ." (§ 1245.230, subd. (c).) These three "findings" mirror the three conditions precedent which must exist before the inherent governmental power of eminent domain can be validly exercised. (§ 1240.030.) It has been judicially recognized that "[i]mplicit in this requirement of a hearing and the adoption of a resolution of necessity is the concept that in arriving at its decision to take, the Agency engage in a good faith and judicious consideration of the pros and cons of the issue and that the decision to take be buttressed by substantial evidence of the existence of the three basic requirements set forth in Code of Civil Procedure, section 1240.030, . . ." (*Redevelopment Agency* v. *Norm's Slauson* (1985) 173 Cal.App.3d 1121, 1125-1126 [219 Cal.Rptr. 365].) ▉ In short, the statutory requirement that a public entity adopt a Resolution of Necessity before initiating a condemnation action is designed to ensure that public entities will verify and confirm the validity of their intended use of the power of eminent domain prior to the application of that power in any one particular instance.

Where, as here, the condemning entity is seeking to acquire property lying outside of its own boundaries, the adoption of a Resolution of Necessity creates a rebuttable presumption that the three matters referred to in section 1240.030 are true. (§ 1245.250, subd. (b).)[8] Under section 1245.255, subdivision (b), however, the adoption of a Resolution of Necessity does not enjoy such a presumption of truth if it is shown that either the adoption of the resolution or the contents of the resolution "were influenced or affected by gross abuse of discretion by the governing body."

▉ Grabowski contends that the District failed to establish the existence of the three conditions precedent necessary to a valid exercise of the eminent domain power and, thus, that the District never perfected its "right to take" with regard to Grabowski's property. Grabowski's contention is actually two-fold: (a) The District's Board failed to engage in a "good faith and judicious consideration of the pros and cons of the issue" in

[8] This presumption of truth is a presumption "affecting the burden of producing evidence." (§ 1245.250, subd. (b).) A presumption affecting the burden of producing evidence has the effect of requiring "the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption." (Evid. Code, § 604.)

conducting its hearing on the Resolution of Necessity. Specifically, Grabowski asserts that the Board's decision to adopt a Resolution of Necessity favoring the acquisition was nothing more than the "rubber stamp" of a predetermined result which was itself unsupported by any substantial evidence (i.e., a "gross abuse of discretion"). Consequently, absent the adoption of a valid Resolution of Necessity, the existence of the three conditions precedent necessary to a valid act of condemnation was never presumptively established.

(b) Even if the Resolution of Necessity was properly adopted, thus presumptively establishing the existence of the three conditions precedent, this rebuttable presumption of truth was overcome at trial by the introduction of contradictory evidence; and the District then failed to meet its burden of establishing the existence of those three conditions precedent by direct evidence.

■ It should be noted that, in this case, the end result is the same whether (1) the Resolution of Necessity is successfully challenged as having been influenced by a gross abuse of discretion, or (2) the presumption of truth created by the valid adoption of a Resolution of Necessity is overcome by the introduction of contradicting evidence at trial: the burden is placed on the District to establish by a preponderance of the evidence that the three section 1240.030 conditions precedent existed with respect to the District's condemnation. (*Redevelopment Agency* v. *Norm's Slauson, supra,* 173 Cal.App.3d 1121, 1128.) Our review of the trial court's determination in this regard is limited by the substantial evidence test. (*Ibid.*)

Grabowski relies almost exclusively on the *Norm's Slauson* case, *supra,* for support for his argument that the District committed a gross abuse of discretion in adopting a Resolution of Necessity. Grabowski's reliance is misplaced. We deal here with a clearly distinguishable factual situation: (a) In *Norm's Slauson,* the condemnor had misled the condemnee as to the scope of the project, thus effectively depriving the condemnee of an opportunity to present countervailing information to the condemnor's governing body at the hearing held to consider the adoption of a Resolution of Necessity. In this case, Grabowski received notice of the District's hearing, but chose not to present countervailing information, suggest alternative plans, or ask for a continuance of the hearing so as to have more time to pursue the matter further.

(b) In *Norm's Slauson,* the condemnor was bound by preexisting financial and construction obligations when it met to "consider" the adoption of a resolution. In this case, the District had no financial obligations concern-

ing the project. (Neither, for that matter, did the Fontana Redevelopment Agency.) The entire risk for funding the repayment of the revenue bonds, over and beyond tax increment receipts, was borne by the developer—as were all project construction costs. Further, there was testimony that the District never felt "bound" by the initial project proposals, but rather was prepared to consider alternative construction proposals, had any been made.

(c) In *Norm's Slauson,* the record was devoid of any indication that meaningful, specific information was presented to the condemning agency's governing body to support a conclusion that the three section 1240.030 conditions precedent were met with regard to the project being considered. In this case, the record indicates that engineering representatives from both the District staff and the developer presented detailed project specifics to the District's Board at the hearing. These specifics directly addressed the existence of the three critical issues.

After a thorough review of the record before us, we are compelled to conclude that there is substantial evidence to support the trial court's conclusion that the Board did not commit an abuse of discretion in adopting the Resolution of Necessity.

Likewise, there is substantial evidence to support the trial court's conclusion that the District established at trial the three section 1240.030 conditions precedent necessary to its valid exercise of the eminent domain power. Evidence established the need for the project arising as a result of redevelopment construction ("public interest and necessity"). Evidence also established that Grabowski's site was the *smallest* and least expensive site which would serve to accommodate the project ("the greatest public good and the least private injury"). Finally, evidence established that the Grabowski site was especially topographically suitable and desirable as the location for the project ("necessary for the project").

We conclude that the District met its burden in establishing its right to exercise the power of eminent domain and that the trial court was thus correct in upholding the District's "right to take."

### III

#### ATTORNEY'S FEES

Grabowski contends that the trial court erred in refusing to award him reasonable attorney's fees as a part of his overall recovery. We conclude that the trial court was correct.

The issue of attorney's fees is primarily controlled in this instance by section 1250.410 of the Eminent Domain Law. This provision makes an award of attorney's fees in an eminent domain case contingent on, among other things, the tendering of a reasonable pretrial settlement offer by the property owner. Grabowski concedes, as he must, that he never complied with the clear language of the statute in this regard.

Grabowski contends, however, that he should not be bound by the requirements of section 1250.410 under the "unique and particular circumstances of this case." Apparently, Grabowski's argument is that he could not be certain of being able to pursue his objection to the District's "right to take" if he were obliged to make a settlement offer susceptible of being accepted by the District—and, thus, that section 1250.410 unfairly required him to risk having to abandon his primary litigative position in order to "qualify" for an award of attorney's fees.

Grabowski's contention fails to take the entire legislative scheme which applies to this case into account. Opting to pursue his objections to the District's "right to take" did *not* deprive Grabowski of any and all opportunity to obtain an award of attorney's fees. If Grabowski had prevailed in his challenge to the District's "right to take" under the provisions of the Eminent Domain Law, section 1268.610 would have provided him with a recovery of attorney's fees. If Grabowski had prevailed in his challenge to the District's "right to take" under the provisions of the PRA, sections 91003, subdivision (a) and 91012 of the Government Code would have provided a means by which to seek a recovery of attorney's fees. Grabowski, however, has prevailed under neither of these legislative frameworks.

Neither equity nor the Eminent Domain Law requires an award of attorney's fees to a party which insists on litigating losing causes. The choice as to whether to attempt a settlement of this litigation was Grabowski's. He made his choice and must now live with the consequences of that decision.[9]

---

[9] Grabowski's brief also suggests the availability of the "private attorney general" statute (Code Civ. Proc., § 1021.5) as a basis for an award of attorney's fees. This statute, however, only provides for attorney's fees if a "successful party" moves a court for such fees. While Grabowski's posttrial motion casually mentioned section 1021.5 as a basis for an award of attorney's fees, as does his opening brief on this appeal, the issue has not been specifically addressed or argued to either the trial court or to us. Consequently, we deem the argument to have been waived and need not reach the issue of whether section 1021.5 would have otherwise supported a partial award of attorney's fees with regard to the interest rate issue raised in this case. (*Utz* v. *Aureguy* (1952) 109 Cal.App.2d 803, 807 [241 P.2d 639]; see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal § 479, pp. 469-471.)

## IV

### INTEREST

 In an eminent domain action such as this one, where the condemnor takes possession of the condemnee's property some period of time before payment is made for the acquisition, the constitutionally mandated measure of payment, "just compensation," includes an element of interest. (*Redevelopment Agency* v. *Gilmore* (1985) 38 Cal.3d 790, 797 [214 Cal.Rptr. 904, 700 P.2d 794].) The interest is intended to compensate the condemnee for its loss of the use of the money due as compensation for the acquisition of the property for that period of time between loss of possession and receipt of payment. (*Id.,* at p. 799.)

Prior to the *Gilmore* decision, the interest rate to be utilized in calculating the amount of interest includable in the overall compensation award was arguably fixed by section 1268.310 of the Eminent Domain Law. At all times relevant to this case, that section required the payment of "legal interest."[10] Traditionally, the "legal interest" payable in eminent domain cases, both pre- and postjudgment, has been understood to be that rate established by the Legislature for judgment interest. (*Gilmore, supra,* 38 Cal.3d at p. 795, fn. 2.) The "legal interest" applicable at all times in this case was 10 percent. (§ 685.010.)

In *Gilmore,* the California Supreme Court held that the interest element of just compensation was to be based on judicially determined "market rates" and that statutory rates of "legal interest" could not act as a "ceiling" on those market rates. The Supreme Court expressly declined to reach the issue of whether the interest calculation could be based on market rates *below* statutory rates. (*Gilmore, supra,* 38 Cal.3d at p. 802, fn. 13.) We reach that issue in this case.

 Grabowski contends that the trial court erred in computing the interest element of the just compensation required to be paid in this case. In brief, Grabowski argues that the court's computation of interest fell short of that which is legally mandated in that it was based on rates of return that were less than appropriate market rates of interest, or, at least, that were less than the statutory rate of 10 percent per annum. Grabowski's contention as to "appropriate" market rates of interest may be disposed of without

---

[10] We are aware of the amendment to section 1268.310, effective on January 1, 1987, by which the Legislature replaced the direct reference to "legal interest" with a reference to a variable rate defined elsewhere in the Eminent Domain Law. Nothing we say in this opinion is intended to reflect on that more recent legislative scheme.

lengthy discussion. Grabowski's argument in this regard, that the trial court should have used higher rates deriving from longer-term money-market obligations, is analogous to that made by the condemnee, and rejected by the court, in *Coachella Valley Water Dist.* v. *Western Allied Properties, Inc.* (1987) 190 Cal.App.3d 969, 979-980 [235 Cal.Rptr. 725]. ▇▇ As the court stated in that case, "The factfinder's decision on the market rate of interest is upheld if supported by substantial evidence, unless based on incorrect legal principles." (*Id.,* at p. 980, citing directly to *Redevelopment Agency* v. *Gilmore, supra,* 38 Cal.3d 790, 807.) ▇▇ In this case, we find that the trial court considered appropriate money-market obligation data and that the trial court's determination of what constituted market rates of interest was supported by substantial evidence. Thus, we uphold the trial court's decision as to what appropriate market rates of interest were during the period of time here in issue.

We agree with Grabowski, however, that the trial court erred in utilizing market rates of interest below the "legal interest" of 10 percent in arriving at an overall interest figure.[11]

The District argues forcefully that, if "just compensation" requires only the payment of market interest, an obligation to pay interest at a higher statutory rate would unjustly award condemnees with more than that which is constitutionally required. Our Supreme Court answered this argument in its *Gilmore* decision: "The Legislature may choose to recompense the owner of property or a business for a variety of losses caused by exercise of the eminent domain power. Its choices, however, are not necessarily the measure of the 'just' compensation constitutionally due. [Citations.] *A statute's provisions may exceed constitutional requirements in one area while failing to fulfill them in another.*" (*Gilmore, supra,* 38 Cal.3d at p. 801, italics added.)

Unless we are compelled, then, to cast aside section 1268.310 as being in some manner an invalid exercise of the legislative power, that section serves to establish a 10 percent "floor" below which eminent domain interest calculations cannot be carried—irrespective of the concurrent market rate of interest. In inquiring into whether the Legislature can validly require a payment of interest in excess of constitutional requirements, we are mindful of the general sentiment once expressed by our Supreme Court in a somewhat different eminent domain context: "The courts, . . . have in essence recognized their limitations in providing overall fair treatment for persons who suffer injuries as a result of public projects. The legislative branch of

---

[11] In arriving at an overall interest figure, the trial court quite properly used a matrix of several different "interim market rates" to reflect the flux of rates which existed during the period of time in question. Only some of these interim rates were below 10 percent.

government, recognizing its peculiar competence in this area, has undertaken responsive steps and evidences a willingness to continue to deal with the difficult and involved questions of social policy which underlie the task. In these circumstances wisdom lies in the direction of judicial deference to the legislative branch." (*Community Redevelopment Agency* v. *Abrams* (1975) 15 Cal.3d 813, 832 [126 Cal.Rptr. 473, 543 P.2d 905, 81 A.L.R.3d 174].)

The only basis suggested by the District's brief for challenging the legislative validity of a statutory interest "floor" of 10 percent is the constitutional prohibition against making a gift of public funds. (Cal. Const., art. XVI, § 6.)[12]

■ It is the general rule in California that an expenditure of public funds for a public purpose, notwithstanding incidental benefits to private persons, does not violate the constitutional prohibition against gifts of public funds. (*Schettler* v. *County of Santa Clara* (1977) 74 Cal.App.3d 990, 1002-1006 [141 Cal.Rptr. 731].) Further, the determination of what constitutes a "public purpose" is primarily a matter left to legislative discretion, assuming only a reasonable basis for the determination. (*Schettler, supra,* at p. 1005, citing *California Emp. etc. Com.* v. *Payne* (1947) 31 Cal.2d 210, 216-217 [187 P.2d 702].) ■ Our inquiry, then, is into whether there is a reasonable basis for a 10 percent "floor" below which eminent domain interest calculations cannot be carried.

Condemnees suffer a particular, irreversible injury in each instance where the power of eminent domain is exercised: the loss of all future options concerning the use and enjoyment of the condemned property. In cases where payment for a condemned parcel is made only some time after possession of the parcel is taken by the condemnor, the condemnee is subjected to the further injury of having to involuntarily "loan" the condemnor the interim use of the compensation, at interest rates which the condemnee is not free to negotiate, until such time as payment is actually made (an injury which the *Gilmore* decision [*Gilmore, supra,* 38 Cal.3d at p. 802] accurately characterized as an "involuntary financing burden"). The Legislature, "in providing overall fair treatment for persons who suffer injuries as a result of public projects" (*Community Redevelopment Agency* v. *Abrams, supra,* 15 Cal.3d at p. 832), reasonably could have concluded that sound social policy requires that under no circumstances should condemnees receive *less* than the statutory judgment interest rate prevailing in this state for all other judgment creditors.

---

[12] In turn, of course, this suggestion derives directly from Justice Mosk's concurring opinion in *Gilmore.* (*Redevelopment Agency* v. *Gilmore, supra,* 38 Cal.3d 790, 809.)

Inasmuch as there is a reasonable basis for the Legislature's having fixed a 10 percent interest rate "floor" for eminent domain cases, we conclude that that rate, notwithstanding lower extant market rates of interest, is not invalidated by the constitutional prohibition against gifts of public funds.

We therefore hold that the statutory interest rate of 10 percent required by section 1268.310 acted as a minimum rate in this case for the purpose of calculating the interest element of the overall award of just compensation.

## DISPOSITION

The judgment is affirmed in part and reversed in part.

We reverse as to the amount of interest to be awarded in this case and remand this matter to the trial court for a redetermination of the interest to be included as a part of the overall award. It will not be necessary to completely recalculate the interest, but only to recompute the total award of interest by substituting a value of 10 percent in the original calculations where a lesser rate had been used.

In all other respects, the judgment is affirmed.

McDaniel, J., and Dabney, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 25, 1989.