[No. B053099. Second Dist., Div. Four. Aug. 31, 1993.]

GLENDALE REDEVELOPMENT AGENCY, Plaintiff and Respondent, v. ROBERT M. PARKS et al., Defendants and Appellants.

COUNSEL

Fadem & Douglas, Andrew H. Kopkin and Jerrold A. Fadem for Defendants and Appellants.

Hahn & Hahn and Don Mike Anthony for Plaintiff and Respondent.

OPINION

WOODS, (A. M.), P. J.—This appeal by Robert and Audrey Parks (appellants) is from judgment in an eminent domain proceeding initiated by the Glendale Redevelopment Agency (Agency). The court below denied appellants' motion for litigation costs, for interest on a deposit of funds made prior to possession and their challenge to the constitutionality of Code of Civil Procedure section 1268.350, setting the rate of interest in eminent domain proceedings.

The facts are as follows. Additional facts will be set forth as necessary to our discussion of the legal issues.

In 1987, appellants owned a 30-unit apartment building located at the corner of Central Avenue and Burchett Street in the City of Glendale. The property was located in the city's central business district. Zoning in that

area permitted intensive commercial development as well as limited, but intensive, residential development. On July 2, 1987, the Agency filed a complaint in eminent domain by which it sought to condemn the property for redevelopment purposes.

On July 6, 1987, the trial court issued an order permitting the Agency to deposit the sum of $1.2 million with the court. The amount of the deposit was based upon an appraisal of the subject property by Stephen Whittlesey, who assessed its value at $1.4 million. On July 6, 1987, the court issued an order for prejudgment possession authorizing possession 90 days after the order. On October 11, 1987, the Agency took possession of the subject property.

On January 11, 1988, the first pretrial conference was held. The date of valuation of the property was established as July 2, 1987. Using that date, the Agency's appraiser, Whittlesey, submitted a trial appraisal valuing the subject property at $1,545,000, or $145,000 more than his original appraisal. Appellants submitted an appraisal done by Robert Flavell in which he valued the subject property at $1,950,000. Both appraisers stated that the highest and best use of the property was "as presently improved with a 30 unit apartment building." The case was then set for a mandatory settlement conference. In the interim, the Agency's attorney reviewed the Flavell appraisal and directed Whittlesey to also review and comment on the Flavell appraisal. Whittlesey reviewed the Flavell appraisal and advised the Agency's attorney and its executive director that there was nothing in it that caused him to change his opinion of the subject property's value.

At the mandatory settlement conference, the Agency offered the appellants $1.7 million to settle, which was $155,000 over its appraisal. Appellants demanded $1,850,000, or $100,000 less than their appraisal. The settlement judge suggested that the parties essentially split the difference, but appellants refused to consider it.

The matter came to trial in March 1990. The only issue was the valuation of the subject property. Flavell, appellants' appraiser, testified that, as of July 9, 1987, the highest and best use of the subject property was its existing use as an apartment building. Whittlesey testified to the same effect. Both appraisers used the same methods to produce their valuations of the property, an income approach and a market data approach. They differed, however, on variables like comparable sales, gross income multipliers and fair market rents.

On March 9, 1990, the jury returned a verdict in which it found that the fair market value of the subject property on July 2, 1987, was $1.9 million.

Appellants then moved for litigation expenses pursuant to Code of Civil Procedure section 1250.410. Earlier they had filed a brief in which they contended that the minimum rate of interest on any award was the 10 percent rate set forth in Code of Civil Procedure section 685.010, subdivision (a), rather than the variable rate established for eminent domain actions in Code of Civil Procedure sections 1268.310 and 1268.350. Finally, they contended that they were entitled to such interest from July 6, 1987, the date the prejudgment possession order was filed, rather than October 11, 1987, when the Agency took actual possession.

The court denied all of appellants' posttrial motions and a judgment was entered on August 16, 1990. This appeal ensued. We affirm.

I

■ Appellants contend that the court abused its discretion when it denied their request for litigation expenses under Code of Civil Procedure section 1250.410.[1] Subdivision (b) of that section provides: "If the court, on motion of the defendant made within 30 days after entry of judgment, finds that the offer of the plaintiff was unreasonable and that the demand of the defendant was reasonable viewed in the light of the evidence admitted and the compensation awarded in the proceeding, the costs allowed pursuant to Section 1268.710 shall include the defendant's litigation expenses." (§ 1250.410, subd. (b).)

■ "The statute calls on the trial judge to make a discretionary determination of reasonableness after weighing all the evidence and assessing witness credibility independently of the jury." (*County of San Diego* v. *Woodward* (1986) 186 Cal.App.3d 82, 90 [230 Cal.Rptr. 406].) "Conflicts in the evidence are for the trial court. As a factual determination supported by the evidence, the trial court's finding of reasonableness, along with the judgment, is entitled to a broad presumption of validity on appeal [citations]." (*State of California* ex rel. *State Pub. Works Bd.* v. *Turner* (1979) 90 Cal.App.3d 33, 36-37 [153 Cal.Rptr. 156].) "The implied finding of reasonableness or unreasonableness is a factual determination which lies within the purview of the trial court and where supported by any substantial evidence, this determination will not be disturbed on appeal. [Citation.]" (*City of Commerce* v. *National Starch & Chemical Corp.* (1981) 118 Cal.App.3d 1, 20 [173 Cal.Rptr. 176].)

"General guidelines have been developed to aid trial courts in determining the reasonableness or unreasonableness of the offer. [Citation.] They are (1)

---

[1]All further statutory references are to the Code of Civil Procedure.

the difference between the offer and the compensation awarded, (2) the percentage of difference between the offer and award, and (3) the good faith, care and accuracy in how the amount of offer and amount of demand respectively were determined. [Citation.]" (*San Diego Gas & Electric Co.* v. *Daley* (1988) 205 Cal.App.3d 1334, 1352 [253 Cal.Rptr. 144].) This assessment is based on "all the evidence admitted, not just the numerical amounts of the offer, demand and award." (*County of San Diego* v. *Woodward, supra,* 186 Cal.App.3d at p. 90.)

▉ In the instant case, the evidence relevant to the issue of reasonableness is as follows: The Agency initially appraised the value of the subject property at $1.4 million. Thereafter, the Agency ordered its appraiser, Whittlesey, to prepare a trial appraisal. Whittlesey's trial appraisal valued the subject property at $1,545,000, some $145,000 more than his initial appraisal. Appellants' appraisal of the subject property conducted by Robert Flavell was in the amount of $1,950,000. After the Agency was provided with the Flavell appraisal, its counsel reviewed it and directed Whittlesey to also review it in advance of the mandatory settlement conference. Whittlesey reviewed the Flavell appraisal and advised the Agency's counsel and executive director that he would stand by his opinion of value. Nonetheless, the Agency's final offer was $1.7 million, which was $155,000 over its appraisal and only $150,000 less than appellants' statutory demand of $1,850,000. Moreover, when the settlement officer urged the parties to consider settling at the midpoint between their offers, the Agency was willing to consider his proposition, but not appellants. The final jury award was $1.9 million.

When the trial court denied appellants' request for litigation expenses, it impliedly found that the Agency's offer was reasonable. Based on the evidence we have set out, we find no error. The common thread that runs through the case law, moreover, is the deference the reviewing court pays to the trial court's decision.

In *County of Los Angeles* v. *Kranz* (1977) 65 Cal.App.3d 656 [135 Cal.Rptr. 473], the reviewing court affirmed an award of litigation expenses where the county's offer was less than 80 percent of the jury award, the offer was lower in absolute terms than the verdict and the county had ignored the owner's appraisal in making its offer. (*Id.* at pp. 659-660.) In *San Diego Gas & Electric Co.* v. *Daley, supra,* 205 Cal.App.3d 1334, the reviewing court, again affirming the trial court, found unreasonable "as a matter of law" two offers that were, respectively, 23.5 percent and then 29.4 percent of the jury's award. (*Id.* at p. 1352.) In *Community Redevelopment Agency* v. *Matkin* (1990) 220 Cal.App.3d 1087 [272 Cal.Rptr. 1], the court affirmed the award of litigation expenses to the landowners even though the offer was

$600,000 plus $53,776 for lost goodwill, the demand $690,000, and the jury award $686,868. (*Id.* at p. 1092.) In affirming the award, the reviewing court relied on the principle of substantial evidence and cited the fact that the landowners' demand was nearly identical to the award and that the demand was halfway between the parties' appraisals. Thus, "the City has failed to establish the Matkins' demand was unreasonable." (*Id.* at p. 1098.)

The extent to which the reviewing court will affirm the reasonableness determination of the trial court is also demonstrated in those cases in which the trial court denied the request for litigation expenses.

In *Los Angeles Unified Sch. Dist.* v. *C. F. Bolster Co.* (1978) 81 Cal.App.3d 906 [146 Cal.Rptr. 789], the reviewing court affirmed denial of litigation expenses though the district's offer was $20,000 less than the landowners' demand, there was a difference of $101,625 between the parties' appraisal and the offer was $39,000 less than the ultimate award. Despite the substantial difference in absolute numbers, the appellate court affirmed the trial court's determination of reasonableness because ". . . the plaintiff's final offer was 87 percent of the jury's award." (*Id.* at p. 915.)

In *State of California* ex rel. *State Pub. Works Bd.* v. *Turner, supra,* 90 Cal.App.3d 33, the Court of Appeal affirmed denial of a request for litigation expenses in a case in which the offer was $462,300, the demand was $600,000 and the award $587,000 because the state's use of a qualified appraiser who used proper comparable sales to assess value showed good faith. (*Id.* at pp. 37-38.)

Finally, in *County of San Diego* v. *Woodward, supra,* 186 Cal.App.3d 82, the city's offer was $65,000 based on an appraisal of $54,600, the demands were $538,000 and $380,000 and the final award was $670,555. Notwithstanding the drastic difference in both percentage and absolute terms, the reviewing court upheld the finding of reasonableness on the grounds that it involved a credibility determination with respect to the city's appraiser. (*Id.* at pp. 91-92.) The court observed: "A purely mathematical examination of the offer, demand and award may be useful where the condemner is unwilling to compromise despite the condemnee's reasonable position. [Citation.] However, such is not the case here. This is not a case where the condemner's offer ignored a landowner's expert's appraisal. [Citation.] This is not a case where the condemner engaged in 'unyielding adherence' to its appraisal incompatible with the spirit of compromise. [Citation.]" (*Id.* at p. 91.)

We find these observations in *Woodward* particularly relevant to the case before us. Here, the Agency's final offer was 89 percent of the award and 92

percent of the appellants' final demand. In the *Bolster* case, the fact that an offer was 87 percent of the final award was held dispositive evidence of reasonableness. (*Los Angeles Unified Sch. Dist.* v. *C. F. Bolster Co., supra,* 81 Cal.App.3d at p. 915.)

Contrary to appellants' assertion, the record states, in the form of a declaration by the Agency's counsel, that not only did he review appellants' appraisal, but he instructed his appraiser to do so, and both counsel and the Agency's legal director met with the appraiser to discuss his review of that appraisal. The Agency did not ignore the landowners' appraisal and therefore did not violate one of the factors of a good faith inquiry. (*County of Los Angeles* v. *Kranz, supra,* 65 Cal.App.3d at pp. 659-600.) Nor did the Agency's conduct show an intransigence "incompatible with the spirit of compromise." (*County of San Diego* v. *Woodward, supra,* 186 Cal.App.3d at p. 91.) Rather, the Agency's final offer was $155,000 more than its own appraiser's estimate of the value of the property and $150,000 less than appellants' demand. The Agency was also willing to consider a settlement midway between its offer and appellants' demand, but appellants were unwilling to do so. There is ample evidence that the Agency acted in good faith.

Appellants attack the Agency's appraisal and particularly the methodology of its appraiser, Whittlesey, as demonstrative of bad faith. Essentially, the same argument was made to the trial court. It involves an assessment of the evidence and particularly the qualifications, testimony, demeanor and credibility of Stephen Whittlesey. This assessment is best made by the trial court. (*State of California* ex rel. *State Pub. Works Bd.* v. *Turner, supra,* 90 Cal.App.3d at p. 36.)

We conclude that the trial court did not abuse its discretion in denying appellants' request for litigation expenses.

II

Next, appellants attack the constitutionality of section 1268.350. That section sets forth the statutory interest rate in eminent domain cases. Appellants contend that the statute abrogates the judiciary's power to set compensation in eminent domain cases and denies them equal protection. The argument is without merit.

Section 1268.360 states: "The interest payable for each six-month period [on a condemnation award] shall draw interest, computed as prescribed by Section 1268.350, in each succeeding six-month period for which interest is

due." Section 1268.350, subdivision (a)(1) defines apportionment rate as "the apportionment rate calculated by the Controller as the rate of earnings by the Surplus Money Investment Fund for each six-month period." The Surplus Money Investment Fund is a variable rate. (*San Bernardino County Flood Control Dist.* v. *Grabowski* (1988) 205 Cal.App.3d 885, 901, fn. 10 [252 Cal.Rptr. 676].)

■ These provisions were enacted in response to the Supreme Court's decision in *Redevelopment Agency* v. *Gilmore* (1985) 38 Cal.3d 790 [214 Cal.Rptr. 904, 700 P.2d 794]. At the time *Gilmore* was decided, the interest paid on condemnation awards was set by statute as the rate of legal interest, then 7 percent and now 10 percent. The issue as defined by the court was: "[D]oes the 'just compensation' which the Constitution requires include interest at prevailing market rates rather than a lower 'legal' rate specified in the Eminent Domain Law?" (*Id.* at p. 794.) The court determined that the answer to this question was yes, because "a statutory interest ceiling cannot prevail where it falls short of the constitutional 'just compensation' . . . . When the delay occurs during times of inflationary market interest rates which substantially exceed the statutory rate, application of the lower statutory limit denies the condemnee 'the full equivalent of the [property's] value . . . at the time of the taking paid contemporaneously with the taking.' (*Phelps* [v. *United States* (1927)] 274 U.S. [341,] 344 [71 L.Ed. [1083,] 1085].)" (*Redevelopment Agency* v. *Gilmore, supra*, at p. 797.)

*Gilmore* also stated that the determination of what constituted the appropriate rate of interest for just compensation was a matter for the courts. "Many courts have recognized that, while the statutory rate of interest may apply if it is constitutionally adequate, ultimate determination of the rate of interest required for 'just compensation' is a judicial function. An adequate rate, these cases hold, must reflect conditions in the usual interest markets. [Citations.]" (*Redevelopment Agency* v. *Gilmore, supra*, 38 Cal.3d at pp. 797-798.) The court suggested that this task "must primarily be the task of trial rather than appellate courts." (*Id.* at p. 806.)

■ Citing *Gilmore*, appellants contend that sections 1268.350 and 1268.360 are unconstitutional because they represent an improper legislative limitation on just compensation interest. There is no merit to this contention.

Preliminarily, we note that *Gilmore* does not prohibit the Legislature from setting guidelines for the rate of interest for condemnation awards, it merely prohibits the Legislature from enacting a ceiling that does not reflect prevailing interest markets. (38 Cal.3d at p. 797.) Indeed, the court envisioned legislative action: "Nothing in this opinion is intended to prevent the

Legislature from enacting its own prevailing-rate formula. Nor need a legislative formula adhere strictly to that set forth in this opinion, so long as the general requirements of 'just compensation' we have discussed are satisfied." (*Id.* at p. 807, fn. 21.) As was said in *Miller* v. *United States* (1980) 620 F.2d 812 [233 Ct.Cl. 352], a case on which the appellants rely: "It does not rest with Congress to say what compensation shall be paid, or even what shall be the rule of compensation. [Citation.] However, the rate of interest set by a statute can be applied to a claim for just compensation if such rate is reasonable and judicially acceptable. [Citation.]" (*Id.* at p. 837.)

▮ Whether or not the rate of earnings of the Surplus Money Investment Fund is a reasonable and judicially acceptable one cannot be determined because appellants failed to make any showing on the issue. There is nothing in the record to document the rate of earnings for the Surplus Money Investment Fund. Instead, as an exhibit to their trial brief, appellants attached various advertisements for investment opportunities with rates of interest from a low of 7.07 percent to 8.50 percent. Since there is no transcript of the hearing at which this issue was argued, the record is silent as to what evidence, if any, was introduced on the point. This omission is significant because the interest issue as articulated by *Gilmore* was not whether a specific rate of interest was constitutionally mandated, but whether the rate of interest which the trial court applied produced just compensation.

Under *Gilmore*, therefore, appellants were required in the first instance to establish at the trial level that the rate of earnings of the Surplus Money Investment Fund denied them just compensation. (*Redevelopment Agency* v. *Gilmore, supra,* 38 Cal.3d at p. 804; cf. *Smith* v. *County of Los Angeles* (1989) 214 Cal.App.3d 266, 293-294 [262 Cal.Rptr. 754] [trial court correctly used Surplus Money Investment Fund as guidelines for determining interest for period prior to enactment of interest statute].)

▮ Having failed to establish this factual record, appellants contend instead that sections 1268.350 and 1268.360 are constitutionally inadequate as a matter of law. *Gilmore* makes it clear, however, that the question of whether a rate of interest is constitutionally adequate cannot be resolved simply as a matter of law. As we have noted, *Gilmore* provided that resolution of this question "must primarily be the task of trial rather than appellate courts." (*Redevelopment Agency* v. *Gilmore, supra,* 38 Cal.3d at p. 806.) Moreover, the court in *Gilmore* refrained from deciding the very issue that appellants raise, "whether the legal rate prevails when it is higher than the market rate [citation] or when there is no significant difference between the two. [Citations.]" (*Id.* at p. 802, fn. 13, italics omitted.) There is no

support, therefore, for appellants' position that the higher rate must always prevail even if this means applying the legal rather than the market rate. (*Redevelopment Agency* v. *Gilmore, supra,* 38 Cal.3d at p. 809 (conc. opn. of Mosk, J.) ["A condemnee is entitled to . . . not less than the current market value . . . [but also] not more." (Italics omitted.)].) Equally unsupportive of their position is *San Bernardino County Flood Control Dist.* v. *Grabowski, supra,* 205 Cal.App.3d 885, in which it is specifically stated that having been decided prior to the effective date of sections 1268.350 and 1268.360, it was not intended to reflect on those statutory provisions. (205 Cal.App.3d at p. 901, fn. 10.) These cases do not mandate application of any particular rate of interest as a matter of law.

 Further support for our analysis is found in the recent case of *People* ex rel. *Dept. of Transportation* v. *Diversified Properties Co. III* (1993) 14 Cal.App.4th 429 [17 Cal.Rptr.2d 676], cited to us by appellants in support of their claim that the legal rate of interest should apply to prejudgment interest awards. In fact, however, *Diversified Properties* is contrary to their position.

In *Diversified Properties,* the trial court awarded the condemnee postjudgment interest of 10 percent, using the legal rate of interest statute. The state argued on appeal that the court had erred by applying the legal rate of interest. The Court of Appeals agreed. Citing *Gilmore,* the court reaffirmed the principle that it "is the duty of the trial court, in each instance, to determine the appropriate 'prevailing market rate' of interest to be applied in a 'taking' case." (14 Cal.App.4th at p. 447.) Referring, however, to the prejudgment interest statutes, the court acknowledged that those statutes "will have some significant and practical consequences for the determination of the post-judgment interest rate to be applied in condemnation cases." Specifically, the court observed, "[i]nasmuch as the rate of return earned by the State on its Surplus Money Investment Fund continually 'floats' so as to reflect a relatively current matrix of market rates of interest, it is unlikely that the interest rate fixed pursuant to the legislative scheme will ever be found to deviate widely from a trial court's independent determination of extant market rates." (*Id.* at 451.) Furthermore, because the ". . . apportionment rate of interest earned by the State on its Surplus Money Investment Fund is itself independent evidence of market rates of interest upon which the trial court can rely in independently determining extant market rates or interest . . . absent a compelling showing by a party that other market rates of interest were more appropriate under the particular facts of a case, we find it hard to imagine that a trial court could be found to have abused its discretion in simply relying on the apportionment rate of return in setting the rate of postjudgment interest to be applied in a condemnation case." (*Ibid.,* fn. omitted.)

*Diversified Properties* lends strong support to our conclusion in the instant case: the prejudgment statutes are not only consistent with the requirement that the trial court determine the appropriate rates of interest in condemnation cases but, absent a compelling showing that another rate should be applied, the use by a trial court of the variable Surplus Money Investment Fund is not a dereliction of its duty to determine the prevailing market rate.

Appellants also contend that the interest statutes violate equal protection. This argument suffers from the same deficiency of record as their prior argument. Appellants failed to establish the factual predicate of this argument, which is that the rate of interest they received on the condemnation awards under the statute was less than the legal rate of interest. Where an appellant fails to provide an adequate record and affirmatively show error, " '. . . all presumptions and intendments are in favor of the regularity of the action of the lower court in the absence of a record to the contrary.' " (*People* v. *Green* (1979) 95 Cal.App.3d 991, 1001 [157 Cal.Rptr. 520], quoting *People* v. *Clifton* (1969) 270 Cal.App.2d 860, 862 [76 Cal.Rptr. 193].) Without having established inequality in the rates of interest as between eminent domain awards and ordinary judgments, appellants cannot argue that they have been discriminated against. The two cases upon which they rely to establish that ownership of real property is a fundamental right as to which government regulation must be justified by a compelling state interest (*Lynch* v. *Household Finance Corp.* (1972) 405 U.S. 538 [31 L.Ed.2d 424, 92 S.Ct. 1113]; *Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266 [157 Cal.Rptr. 372, 598 P.2d 25]) do not involve eminent domain proceedings or interest to be paid on a condemnation award and therefore are not authority for the proposition that paying a rate of interest on condemnation awards different from that paid on judgments violates equal protection.[2] (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689] [a case is not authority for a proposition not therein considered].)

Moreover, in *Diversified Properties*, a similar equal protection claim was rejected because the issue of interest rates in a condemnation case failed to implicate a suspect classification requiring strict scrutiny. (*People* ex rel. *Dept. of Transportation* v. *Diversified Properties Co. III, supra,* 14 Cal.3d at p. 448.) Applying, instead, the rational basis test, the court held that a rational basis supported the legislative distinction between ordinary postjudgment creditors and condemnation judgment creditors. (*Id.* at p. 449.) While *Diversified Properties* involved postjudgment interest, its rejection of the argument that condemnation judgment creditors are a "suspect class" requiring heightened scrutiny under the equal protection clause undermines appellants' equal protection claim.

---

[2]Our resolution of this issue in favor of the validity of sections 1268.350 and 1268.360 also disposes of appellants' claim that interest should have been compounded daily rather than in the six-month increments set forth by the statute.

## III

█ Finally, appellants argue that they are owed interest on the deposit of the condemnation funds from the time such funds were deposited on July 6, 1987, when the Agency obtained an order of prejudgment possession rather than from October 11, 1987, when the Agency actually took possession. During this period, appellants continued to operate the subject property as an apartment building and receive rent.

Section 1268.310 states: "The compensation awarded in the proceeding shall draw interest, computed as prescribed by Section 1268.350, from the earliest of the following dates: [¶] (a) The date of entry of judgment. [¶] (b) The date the plaintiff takes possession of the property. [¶] (c) The date after which the plaintiff is authorized to take possession of the property as stated in an order for possession."

In this case, the Agency obtained an order for prejudgment possession on July 6, 1987. That order authorized possession 90 days hence, and the Agency actually took possession on or about October 11, 1987. Thus, the earliest date on which interest began to accrue was October 4, 1987, the date the Agency was authorized to take possession.

Nonetheless, appellants argue that they were entitled to interest on the funds deposited on July 6, 1987, because they "owned" the deposit. For this proposition they cite article I, section 19 of the state Constitution, *Metropolitan Water Dist.* v. *Adams* (1948) 32 Cal.2d 620 [197 P.2d 543], and *Redevelopment Agency* v. *Goodman* (1975) 53 Cal.App.3d 424 [125 Cal.Rptr. 818]. These authorities do not advance their argument.

Article I, section 19 is the constitutional guarantee of just compensation in eminent domain proceedings, providing: "Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of just compensation." (Cal. Const., art. I, § 19.)

This constitutional provision does not mandate the payment of prejudgment interest upon deposit of funds into the court where the subject property is neither damaged nor possessed by the condemner. On the contrary, it is well settled that "Until a citizen is deprived of possession of the property sought to be condemned, his right to the use and enjoyment thereof as it stood at the time of commencing the action is in no wise abridged. Therefore, it cannot, in a legal sense, be said that he is damaged until the actual

taking of the property." (*Los Angeles* v. *Gager* (1909) 10 Cal.App. 378, 382 [102 P. 17]; *Holtz* v. *San Francisco Bay Area Rapid Transit Dist.* (1976) 17 Cal.3d 648, 657 [131 Cal.Rptr. 646, 552 P.2d 430] [". . . interest must be computed from the date the taking or damaging was sustained in order to fulfill the constitutional mandate for just compensation. [Citations.]"].) Thus, section 1268.310 is consistent with the constitutional provision, a point that appellants impliedly concede by failing to address the statute.

We have read and considered *Metropolitan Water Dist.* and *Goodman.* Neither of them provides any support for the proposition that appellants advance here. In *Metropolitan Water Dist.,* the question was whether the plaintiff-condemner or the county was entitled to interest on a deposit of funds for condemnation purposes. The Supreme Court held that the interest belonged to the condemner, not the county, because to hold otherwise "results in a windfall to the county, substantially undeserved and earned." (32 Cal.2d at p. 631.) The same could be said of the appellants' position here.

*Goodman* does not assist appellants. *Goodman* involved a dispute over postjudgment interest and is entirely inapposite. *Goodman's* gloss on *Metropolitan Water Dist.,* is, however, instructive: "In *Metropolitan Water Dist.* v. *Adams, supra,* 32 Cal.2d 620, interest was paid to the condemning agency, and not to the condemnees. However, this was a consequence of the fact that money was then paid into court merely as security before condemnation judgments were rendered. Thus, the funds remained under the ownership of the condemning agency until judgments or appropriate court orders were rendered (*id.* at p. 627)." (*Redevelopment Agency* v. *Goodman, supra,* 53 Cal.App.3d at p. 434, fn. 5.) Both *Metropolitan Water Dist.* and *Goodman* support the Agency's position that the funds it deposited with the court prior to taking possession of the subject property were not the property of appellants and they were not entitled to interest on these funds until the Agency took possession.

The judgment is affirmed. The Agency to have its costs on appeal.

Vogel (C. S.), J., and Rappe, J.,* concurred.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.